**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0401n.06
Filed: June 9, 2006

No. 05-3647

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Elaine L. Chao, Secretary of Labor, United States Department of Labor, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | **ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| Akron Insulation and Supply, Inc., Dino L. Lombardi, | ) ) ) | |
| Defendants-Appellants. | ) ) ) | |

**BEFORE:    KEITH, MERRITT, and DAUGHTREY, Circuit Judges.**

**PER CURIAM.** This appeal arises from an action filed by the Secretary of Labor under Section 17 of the Fair Labor Standards Act, 29 U.S.C. § 217, seeking to enjoin defendants Akron Insulation and its president and sole owner, Dino L. Lombardi, from violating the overtime pay and recordkeeping provisions of the Fair Labor Standards Act, and from withholding back wages due. *See* 29 U.S.C. §§ 207, 211(c), 215(a)(2) and 215 (a)(5). The issues involve the question of payment for "shop time" and travel time of employees. After a one-day bench trial, the district court granted judgment in favor of the Secretary, finding that Akron Insulation owed back pay to 45 employees in the amount of $94,830.96, and granting injunctive relief as well. On appeal, Akron Insulation contends that the district court erred in (1) finding that the Secretary met her burden of proving that

Akron Insulation failed to compensate employees for the back wages and (2) improperly drawing

inferences form the evidence to find that the Secretary met her burden. We affirm the decision

below on substantially the same bases identified in the district court opinion. We will briefly discuss

the issues raised on appeal.

In 2003, the Department of Labor conducted an audit of Akron Insulation's wage

practices for the period from September 1, 2001, to August 31, 2003. Based on the investigation,

the Department of Labor alleged that Akron Insulation had violated overtime and recordkeeping

provisions of the Fair Labor Standards Act for employee time spent at Akron Insulation's place of

business before and after working at an off-site job location and for time spent traveling between

Akron Insulation's place of business and the job site. Akron Insulation contends that only the hours

spent working at the job site are compensable unless an employee received proper authorization to

submit other time. As a result of this investigation, the Department of Labor filed a complaint in

district court and a bench trial followed in October 2004.

Under the Fair Labor Standards Act, all hours worked must be compensated. 29 U.S.C. §§

206, 207. While not explicitly defined in the Act, "work" has been defined by the Supreme Court

as "physical or mental exertion (whether burdensome or not) controlled or required by the employer

and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal,*

*Iron and R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944); *accord Chao v. Tradesmen*

*Int'l, Inc.*, 310 F.3d 904, 907 (6th Cir. 2002). Under the Fair Labor Standards Act, an activity is

compensable when it is an "integral and indispensable part of the principal activities." *Steiner v.*

*Mitchell*, 350 U.S. 247, 256 (1956); *see also* 29 C.F.R. § 790.8(a) ("Among the activities included

as an integral part of a principal activity are those clearly related activities which are indispensable to its performance."). The Supreme Court recently reaffirmed this definition of work in *IBP, Inc. v. Alvarez*, 543 U.S. 1144 (2005), holding that employees are to be compensated for time spent walking between changing areas and work areas after putting on or taking off specialized gear and for time spent waiting to take off specialized equipment.

In jobs where most of the employees work off-site from the employer's place of business, employees may still be compensated for time spent working at the employer's place of business as well as the off-site location if the employer requires the employees to gather at the employer's place of business. "Shop time," as it is often called, is compensable when it is indispensable to the employees' principal activities. Examples of activities during "shop time" that are integral to principal activities include reporting to a designated meeting place, receiving assignments, and loading equipment. *Hodgson v. Am. Concrete Constr. Co.*, 471 F.2d 1183, 1185-86 (6th Cir. 1973) (employer must pay for time worked before official 8 a.m. start time where employees required to show up at 7 a.m. to load trucks and travel to job site)*; Herman v. Rich Kramer Constr., Inc.*, No. 97-4308WMS, 1998 WL 664622 (8th Cir. Sept. 21, 1998) (per curiam) (shop time compensable when employees required to report to shop before going to the work site); *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 400 (5th Cir. 1976) (activities such as preparing supply requests, loading trucks, and cleaning equipment are integral part of employee's principal work as an electrician); *Hodgson v. Frisch Dixie, Inc.*, No. 6641, 1971 U.S. Dist. LEXIS 12029, at *11 (W.D. Ky Aug. 16, 1971) (cleaning equipment and preparing for next day were compensable activities), *aff'd*, 469 F.2d 82 (6th Cir. 1972) (per curiam); *O'Brien v. Encotech Constr.*, No. 00-CV-1133, 2004 WL 609798 (N.D. Ill.

Mar. 23, 2004) (gathering tools, supplies, water and paperwork were integral activities that benefitted employer and were therefore compensable).

In this case, testimony demonstrates that employees were clocking in because they were required to be at the shop at a certain time and because they had work to do before leaving for the job site. The arrival time would vary depending on several factors, such as the location and nature of the off-site jobs for that day, but it was always well before the "official" start time of 7:30 a.m. For example, one employee testified that if an employee did not arrive at the shop until 7:30, the crews would be gone. At the shop, employees received assignments, assembled work crews, and loaded trucks with material and equipment. They would then travel to the work site from the shop. At the end of the day, crews would return to the shop to return equipment and report to Lombardi about the job and receive arrival times for the following day. If an employee did not return to the shop and clock out, the investigator used the handwritten time on the card as the ending time for the day. Based on this, the district court agreed with the Labor Department and found that the shop activities were indispensable and should be compensated. Because the shop time in this case was required by Akron Insulation and is integral and indispensable to the performance of the employees' principal activity of installing insulation at off-site locations, it is compensable under the Fair Labor Standards Act. *Steiner v. Mitchell*, 350 U.S. at 256.

While there is testimony by several employees that they *did* sometimes clock in and did not immediately have work to do, it was because they were waiting for Lombardi to give them their assignments or they were waiting for other crew members to arrive. Following the words of John

4

Milton, "They also serve who only stand and wait,"[1] the Fair Labor Standards Act requires that employees must also be compensated for any "wait time" if it is for the employer's benefit and at its behest. Waiting time is compensable when such waiting is an integral part of an employee's principal activities. 29 C.F.R. §§ 785.14 -.15; *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) ("Readiness to serve may be hired."); *Cent. Mo. Tel. Co. v. Conwell*, 170 F.2d 641, 645-46 (8th Cir. 1948) (sleeping time compensable if employee required to be on premises and respond to calls). Here, the employees were sometimes required to wait before beginning the day's work, but they were waiting because the employer required it, not, as asserted by Akron Insulation, because they wished to "drink coffee and socialize."

Other testimony supports the contention that employees were told to come in early to get assignments and load trucks and equipment. To the extent that employees were waiting at times during some mornings, and drinking coffee and socializing while they waited, the wait was for defendant's benefit and the time could not be utilized effectively by the employee, making it compensable. *Wirtz v. Sullivan*, 326 F.2d 946, 948-49 (5th Cir. 1964) (employee must be compensated for time waiting for machine to be fixed). While there is some evidence that employees clocked in and did not always have immediate work to do, most of the pre-7:30 time is compensable under the Fair Labor Standards Act as necessary preparation time, even if the employees testified that they were not actually "working" every minute of that time.

---

[1]From the last line of the poem "On His Blindness," by John Milton.

In sum, Akron Insulation's argument that the Secretary did not meet her burden to show that the additional hours uncovered by the investigation were compensable fails both as a factual and a legal matter. As the district court found, "ample testimony shows that Lombardi required employees to report at specific times and perform several required tasks before departing from the shop for the job site." District Court Decision at 6. Legally, the testimony demonstrates that the time before 7:30 a.m. was compensable because employees were *required* to report to the shop before 7:30 and spent at least some of that time working – either preparing for the day's work or waiting for Lombardi to give them their assignment for the day. Both activities are compensable under the Fair Labor Standards Act.

As for travel time between the shop and the job site, Akron Insulation contends that its collective bargaining agreement does not require it to pay travel time to its employees who belong to the local plasterer's and laborer's union. First, the plain language of the collective bargaining agreement does not explicitly exclude travel time. Second, there is conflicting evidence as to whether Akron Insulation is a signatory to the agreement. Lombardi said the company was a signatory, but counsel for Akron Insulation said it was not. Third, regardless of whether Akron Insulation is a signatory to the agreement, a collective bargaining agreement cannot trump the overtime provisions of the Fair Labor Standards Act. Any provision providing that overtime is not required would be unenforceable because the Act's provisions on overtime pay are not waivable by contract. 29 C.F.R. § 207(a)(1).

Akron Insulation also failed to keep adequate time and wage records. The burden is initially on the plaintiff to show that the employees performed work for which they were not paid. *Anderson*

*v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) (superseded by statute on other grounds). If the plaintiff produces sufficient evidence to establish the amount of work "as a matter of just and reasonable inference," then the burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference drawn by plaintiff's evidence. *Herman v. Palo Group Foster Home*, 183 F.3d 468, 472 (6th Cir. 1999) (internal quotation marks omitted); *U.S.Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 779 (6th Cir. 1995). Akron Insulation, however, did not keep accurate records and therefore cannot rebut the records from the time clock.

The Department of Labor used the clock-in and clock-out times on the time cards, with subtractions made for lunch and other minor adjustments, as the basis for the hours worked by each employee. Akron Insulation claims that the actual time worked is reflected by the handwritten times entered by the employee on the time card and that the time-clock number is used to calculate hours worked only when Lombardi initialed a time card "authorizing" any time before the "official" start time of 7:30 a.m. However, it was demonstrated at trial that there is no consistency on the part of Akron Insulation as to which number (clock or handwritten) was used when calculating the hours worked and the resulting compensation. Records demonstrate that sometimes employees were paid for the time-clock hours *even if* Lombardi did not initial the card. Due to Akron Insulation's inaccurate recordkeeping, it has no way to convincingly rebut the time clock records.[2]

---

[2]Some of the time cards indicate that the employees were paid for hours in excess of the handwritten times. When this occurred, Investigator Zimmerman credited Akron Insulation with the payments. District Court Decision at 9 n.3.

In the absence of more specific records, it was reasonable to rely on the clock-in/clock-out times on the cards instead of the handwritten times because the clock-in/clock-out times include the shop time and travel time, which are compensable as discussed above. To the extent some of that time may not have been compensable, Akron Insulation did not meet its burden of showing what hours were compensable and what were not. As found by the district court, Akron Insulation may not "complain that the calculation of back wages lack[s] exactness and precision" due to its own failure to keep adequate records. To the extent that the Department of Labor, and the District Court, made inferences, they were reasonable. Akron Insulation failed to rebut any inference because it could not offer any evidence of the actual number of hours worked or to negate the reasonableness of the inferences made. Absent other evidence, the clock-in/clock-out times provided the best evidence of hours worked during the relevant period and it was proper to rely on that evidence to calculate the additional hours.

For the foregoing reasons and for the reasons more fully set out in the District Court's opinion, we affirm the judgment of the District Court.