**ALDEN LEEDS, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMIS-SION, Respondent.**

No. 00–2764.

United States Court of Appeals, Third Circuit.

Argued Jan. 17, 2002.

Filed July 31, 2002.

Eric S. Aronson (argued), Steven R. Rowland, Sills Cummis Radin Tischman Epstein & Gross, P.A., Newark, NJ, for petitioner.

Howard M. Radzely, Joseph Woodward, Ann Rosenthal, Ronald J. Gottlieb (argued), Office of the Solicitor, U.S. Department of Labor, Washington, D.C., for respondent.

BEFORE: ALITO and ROTH, Circuit Judges, and SCHWARZER,[1] District Judge.

## OPINION OF THE COURT

ALITO, Circuit Judge.

Alden Leeds, Inc. ("Alden Leeds") petitions for review of an order of the Occupational Safety and Health Review Commission ("Commission"), which upheld a notification of failure to abate violations ("FTA notification") issued pursuant to Section 10(b) of the Occupational Safety and Health Act of 1970 ("Act"), 29 U.S.C. § 659(b). In 1993, Alden Leeds was cited for 13 instances in which pool chemicals had been improperly stored in its facility, and Alden Leeds entered into a settlement agreement under which it agreed to abate the violations for which it had been cited. In 1995, the Occupational Safety and Health Administration ("OSHA"), exercising power delegated by the Secretary of the Department of Labor, issued the "FTA" notification, which listed 33 different instances of improper storage of pool chemicals.

1. The Honorable William W Schwarzer, Senior District Judge for the Northern District of

Alden Leeds contends that the 13 specific instances of improper storage cited in 1993 (i.e., the specific piles of chemicals described in that citation) constitute the "violations" that had to be abated. Because those particular piles no longer contravened storage requirements at the time of the reinspection in 1994, Alden Leeds argues that the FTA notification was unfounded. The Secretary, in contrast, argues that improper storage practices in general constituted the "violations" and that the persistence of these practices at the Alden Leeds facility justified the FTA notification. The Secretary interprets the decision of the Commission as resting on this broad reading of the earlier citation and settlement. We hold that this broad reading of the citation and settlement is arbitrary and capricious, and we thus grant the petition for review and reverse the Commission's decision.

### I.

### A.

The facts relevant to our decision are undisputed. Alden Leeds is in the business of distributing chemicals for swimming pools. Its facility in South Kearny, New Jersey, includes three warehouses in which chemicals are stored and staged for shipping. Most of the chemicals are not hazardous, but some of them are "oxidizers" that promote burning or even spontaneous combustion under certain conditions. The chemicals are stored in containers that are stacked in piles. Inventory is constantly moved around the warehouse and turns over three or four times annually.

California, sitting by designation.

OSHA has not promulgated its own standards concerning the storage of oxidizers. Instead, OSHA relies on three sets of privately issued guidelines: a standard issued by the National Fire Protection Association ("NFPA"), a uniform building code for state and local governments referred to as BOCA, and a chemical industry guidebook known as the Bluebook. Although these guidelines differ in details not relevant here, they all contain certain types of requirements. Among other things, they all limit the maximum tonnage in a single building, the maximum tonnage in a single pile of chemical containers, the maximum height of a pile, the minimum aisle width between piles, and the minimum distance between oxidizers and incompatible chemicals.[2]

In the 1990's, OSHA conducted three inspections of the Alden Leeds warehouses. All three were conducted by the same compliance officer, and all three resulted in citations for similar, storage-related infractions. This case focuses on the second and third inspections, which occurred in 1993 and 1994, respectively. The 1994 inspection (also referred to as the "reinspection") resulted in the 1995 FTA notification at issue here.

The 1993 inspection followed a fire at the Alden Leeds facility. The OSHA inspector issued a citation under the Act's General Duty Clause, 29 U.S.C. § 654(a).[3] After referring to this statutory provision, the citation stated:

The employer did not furnish employment and a place of employment which were free from recognized hazards that were causing or likely to cause death or serious physical harm to the employee in that: employees were exposed to the hazard of fire from the improper storage of highly reactive oxidizing agents:

a) 55 Jacobus Avenue—Warehouse 2 and 3B; Class two oxidizers were not stored in accordance with the National Fire Protection Association (NFPA) document 43A–1990, Table A–2 (Storage of Class 2 Oxidizers) in that the maximum tonnage requirements were exceeded; approximately 120 tons were stored in warehouse B. The maximum tonnage allowed for sprinklered segregated storage is 100 tons of class two oxidizers. Violation observed on or about 8/25/93.

The citation then went on to list 12 other instances of improper storage. These instances related to what the Secretary characterizes as "seven categorical requirements," viz., the maximum tonnage limits for warehouses and piles, the maximum height and width limits for piles, and the minimum separation distance between compatible oxidizers, between incompatible oxidizers, or between oxidizers and walls. The citation offered compliance with NFPA requirement 43A as a feasible method of abatement. Alden Leeds contested the citation. Under the settlement reached by the parties in July 1994, Alden Leeds agreed to abate "[a]ll violations alleged in the Citation and complaint" by October 15, 1994. ALJ–4, Exhibit D.

The Alden Leeds facility was reinspected in December 1994. Although the 13 specific instances of improper storage cited in 1993 had all been corrected, this time OSHA identified 33 different instances of improper storage. These instances con-

---

**2.** Incompatible chemicals are those that, if mixed with oxidizers, can produce a dangerous exothermic reaction or explosion.

**3.** The Act's General Duty Clause imposes on every covered employer the obligation to provide a working environment "free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 U.S.C. § 654(a). Here, the recognized hazard was fire initiated or promoted by oxidizers.

cerned six of the seven categories of requirements involved in the 1993 citation. OSHA issued a FTA notification in June 1995 and assessed a penalty of $107,100.[4]

### B.

Alden Leeds challenged the FTA notification before an administrative law judge. The ALJ noted that the parties took sharply conflicting positions as to the nature of the 1993 violations. App. 41. The ALJ observed that it was the Secretary's position that the 1993 citation concerned Alden Leeds's "storage practices, not specific conditions which violated NFPA 43A (1990)." *Id.* at 40. By contrast, the ALJ wrote, Alden Leeds's defense "focused on the fact that the specific conditions in its warehouses" had been changed by the time of the reinspection in 1994. *Id.* Interpreting the 1993 citation, the ALJ stated that it "does not specifically refer to storage practices" and that the listed violations "clearly refer to specific conditions, not practices." *Id.* at 42. The ALJ described the question before him as whether charging Alden Leeds "with specific conditions" that exposed employees to the hazard of fire from improper storage of the chemicals "clearly informed" Alden Leeds that its storage procedures were deemed hazardous by the Secretary. *Id.* at 42–43. The ALJ stated that the question was "close," but he concluded that Alden Leeds had been clearly informed that its practices, not just the specific instances of improper storage, had been cited. *Id.* The ALJ observed that reading the citation as limited to the specific instances mentioned would "blink the reality of the hazard" in

warehouses where inventory is constantly changing and piles are regularly moved. *Id.* at 43.

Alden Leeds appealed to the Commission, but a divided panel affirmed, with each Commissioner issuing a separate opinion. *Alden Leeds, Inc.*, 19 OSHC (BNA) 1007 (No. 95–1143, 2000); App. at 12–33. The lead opinion, written by Commissioner Rogers, concluded that the 1993 citation gave Alden Leeds adequate notice that the hazard to be abated was not the 13 specific instances of improper storage listed in the 1993 citation or even the seven "categorical requirements" to which the Secretary now refers, but "the fire hazard caused by its storage practices." App. at 17. *See also id.* at 15–16 (agreeing with the ALJ that "Alden Leeds's storage practices constituted the hazard that the Secretary sought to have remedied.") Concurring, Commissioner Weisberg stated, among other things, that although it was undisputed that the 13 specific instances of improper storage listed in the 1993 citation no longer existed at the time of the reinspection, those violations had not been abated. *See id.* at 22–23. Commissioner Weisberg observed that the record strongly suggested that the company had not taken corrective action with respect to those specific conditions but had simply moved chemicals around in the ordinary course of its business. *See id.* at 23. Thus, Commissioner Weisberg seemed to take the position that abatement requires not only the elimination of the hazardous condition but also a specific intent to eliminate the hazard.[5]

---

**4.** A failure to abate citation carries a penalty of up to $7,000 for each day the violation remains unabated. *See* 29 U.S.C. § 666(d). OSHA typically caps the number of days at 30. Here, OSHA reduced the potential maximum fine ($210,000) by 15% because "Alden Leeds had abated some of the specific condi-

tions found in 1993" and again by 40% because it is a small employer, yielding a total of $107,100. App. at 45.

**5.** *See* App. at 30 (Dissenting Opinion) (Commissioner Weisberg "would have the Commission disallow abatements that have occurred

Commissioner Visscher dissented and concluded that the majority had "misconstrued the 1993 citation." App. at 29. He stated that "the only fair reading of the 1993 citation and settlement agreement is that Alden Leeds was charged with, and therefore required to abate, thirteen conditions specifically identified in the citation." *Id.* at 30. He continued that, even if it were possible to read the citation more broadly, Alden Leeds had not been clearly informed of any broader abatement obligation. *See id.* "The 1993 citation," he wrote, "did not explicitly inform Alden Leeds that it was being cited for its overall chemical storage practices on an on-going basis, and therefore it cannot be enforced against the company in that manner." *Id.* at 31.

Alden Leeds filed a timely petition for review under 29 U.S.C. § 660(a). We review the Commission's findings of fact as conclusive if supported by substantial evidence on the record, considered as a whole. *See* 29 U.S.C. § 660(a). Adjudicatory conclusions are reviewed under a standard of "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *Atlantic & Gulf Stevedores, Inc. v. OSHRC*, 534 F.2d 541, 547 (3d Cir.1976).

## II.

### A.

The Act created a tiered system of civil monetary penalties so that an employer can be penalized according to the gravity of its violation. *See* 29 U.S.C. § 666(a)–(d). In order of increasing severity, the tiers are as follows: non-serious violation, serious violation, willful or repeated violation, and failure-to-correct violation. *See id.* A failure-to-correct violation—also referred to as a failure-to-abate violation, the tier at issue here—differs from a "repeated" violation. The former applies if the violation *continuously existed* between the initial and follow-up inspections; the latter applies if the violation was corrected after the initial inspection but then recurred. *See Braswell Motor Freight Lines, Inc.*, 5 OSHC (BNA) 1469, 1471 (No. 9480, 1977). In this proceeding, we consider only whether Alden Leeds's FTA notification was proper, not whether it committed any lesser violation.[6]

█ The specific issue before us is whether the 33 infractions cited in 1995 may properly be penalized as a "failure to abate" the violations cited in 1993, where none of the 13 specific instances of improper storage listed in the 1993 citation was cited in the 1995 notification but all of the infractions listed on both occasions related to the improper storage of oxidizers. As was the case before the ALJ and the Commission, the parties differ sharply about the nature of the violations cited in 1993. The Secretary defends the reasoning of the majority of the Commission, namely, that in 1993 Alden Leeds was cited for—and was given clear notice that it had been cited for—its general storage practices, not just the particular instances of improper storage listed in the citation or even particular types of improper storage, such as having piles that exceeded the maximum height. As the Secretary puts it, "To correct [the violation cited in 1993], Alden

---

through 'changing conditions' within the workplace.").

**6.** On at least one prior occasion, the Commission explicitly declined to convert a FTA notification into a lesser violation for several reasons: inadequate notice, possibly different evidentiary standards, and the late stage of proceedings that reach the Commission. *See Braswell Motor Freight Lines, Inc.*, 5 OSHC (BNA) 1469, 1471 (No. 9480, 1977).

Leeds had to 'free' its workplace of the 'hazard of fire from the improper storage' of oxidizers." Respondent's Br. at 27. Alden Leeds, on the other hand, argues that the "violations" cited in 1993 were the 13 individual piles of chemicals and that once the offending characteristics of those piles were remedied (e.g., by reducing piles cited as too heavy or too high), the 1993 violations had been abated. We hold that the majority of the Commission acted arbitrarily and capriciously in concluding that the 1993 citation both was based on Alden Leeds' general storage practices and provided clear notice to Alden Leeds of that basis.

### B.

Under the Act, OSHA is authorized to issue a citation to an employer if "upon inspection or investigation [OSHA] believes that an employer has violated" any of the standards or rules promulgated under the Act. 29 U.S.C. § 658(a). "Each citation shall ... fix a reasonable time for the abatement of the violation." *Id.* If "an employer has failed to correct *a violation for which a citation has been issued* within the period permitted for its correction," then OSHA may serve the employer with notification of its failure to abate. 29 U.S.C. § 659(b) (emphasis added).

Consistent with the constitutional mandates of due process, a defendant in an OSHA enforcement action must receive adequate notice. The Act protects this right by requiring that a citation "describe *with particularity* the nature of the violation...." 29 U.S.C. § 658(a) (emphasis added). Other courts of appeals have interpreted this particularity requirement. It has been held that, although the description of the violation charged need not be "elaborate or technical or drafted in a particular form[,]" the description must "fairly characterize the violative condition so that the citation is adequate both to inform the employer of what must be changed and to allow the Commission, in a subsequent failure-to-correct action, to determine whether the condition was changed." *Marshall v. B.W. Harrison Lumber Co.*, 569 F.2d 1303, 1308 (5th Cir.1978). The citation "must be drafted with sufficient particularity to inform the employer of what he did wrong, *i.e.*, to apprise reasonably the employer of the issues in controversy." *Brock v. Dow Chemical*, 801 F.2d 926, 930 (7th Cir.1986). Despite the liberality generally afforded to administrative pleadings,[7] "before penalizing a failure to correct a cited violation, the Commission must satisfy itself that the citation defines the 'uncorrected' violation with particularity." *National Realty & Construction Co. v. OSHRC*, 489 F.2d 1257, 1264 n. 31 (D.C.Cir.1973). The Commission's own precedents confirm that OSHA may issue FTA notification if "the condition or hazard found upon reinspection is the identical one for which respondent was originally cited" and the condition existed continuously through the period ending with reinspection.[8] *York Metal Finishing*

---

**7.** We acknowledge that, in general, OSHA citations should be construed liberally and amended easily, because "a narrow construction of the language of a citation would unduly cripple enforcement of the Act." *Dow Chemical*, 801 F.2d at 930 (remanding because unclear whether citation was sufficiently particular to give employer fair notice); *see also Babcock & Wilcox Co. v. OSHRC*, 622

F.2d 1160, 1164 (3d Cir.1980); *National Realty & Construction Co. v. OSHRC*, 489 F.2d 1257, 1264 (D.C.Cir.1973).

**8.** For a FTA notification to be proper, the violation must have existed continuously from the initial citation through the re-inspection. Because we hold that the 1993 citation cannot be considered adequate notice for a FTA

*Co.*, 1 OSHC (BNA) 1655, 1656 (No. 245, 1974); *Braswell*, 5 OSHC (BNA) at 1470.

1. *The 1993 citation.* In the present case, we think that the 1993 citation did not give Alden Leeds adequate notice that its general "storage practices" (App.15) were the "violations" that it was obligated to abate. Nowhere did the 1993 citation state that Alden Leeds's general "storage practices" constituted the violations, nor did the citation state that, to abate the violations, all of Alden Leeds' storage practices had to be kept in compliance with all applicable storage requirements of the NFPA (not to mention BOCA and the Bluebook).

We find somewhat instructive the manner in which OSHA uses the term "violation" in the text of the 1993 citation. After identifying the hazard as the risk of fire from "improper storage" in the introductory paragraph, the citation proceeded to describe the 13 infractions caused by piles exceeding certain measures. The description of each infraction (or small cluster of infractions) concluded: *"Violation* observed on or about [date]." App. at 25 *et seq.* (emphasis added). In other words, OSHA's citation used the term "violation" to refer to the described infractions individually, rather than to non-compliance with storage requirements collectively. Nevertheless, the Commission upheld the FTA notification on the grounds that "Alden Leeds' storage practices constituted the hazard that the Secretary sought to have remedied" and that "[t]he citation made it abundantly clear to Alden Leeds ... that it was required to free its workplace of the fire hazard caused by its storage practices." App. 15–16.

We cannot agree with these grounds upon which the Commission based its decision. Instead, we agree with the dissenting Commissioner that "the only fair reading of the 1993 citation and settlement agreement is that Alden Leeds was charged with, and therefore required to abate, thirteen conditions specifically identified in the citation." App. 30.

■ 2. *Actual knowledge.* The Secretary argues that the Commission found as a fact that "Alden Leeds had actual knowledge that its abatement obligations required it to adopt safe storage practices (App.16)." Respondent's Br. at 43. We disagree. The Commission wrote in pertinent part as follows:

> The 1993 citation clearly stated what hazard was to be abated, and Alden Leeds has never contended that it did not know how to comply with the safety requirements of the NFPA. Indeed, as noted above, in June 1991, Alden Leeds' president wrote to OSHA that the company's storage of oxidizers was in conformance with the NFPA requirements. This letter shows that Alden Leeds was well aware, even in the context of the 1990 citation, that its storage practices were at issue and that Alden Leeds knew how to abate the violation.

App. 16.

We see nothing in this passage that may be interpreted as a factual finding that Alden Leeds knew that its abatement obligation following the settlement of the 1993 citation had the breadth claimed by the Secretary. First, the Commission's finding that Alden Leeds "[knew] how to comply with the safety requirements of the NFPA" is obviously very different from a finding that it knew that its abatement obligation required it to keep all of its storage practices (or even all of its storage

notification of inadequate general storage practices, we need not reach the issue of

continuity.

practices regarding oxidizers) in compliance with the NFPA standards. Second, it is difficult for us to see how the Commission's statements about a letter written by Alden Leeds's president in 1991 can be interpreted as findings regarding Alden Leeds's actual knowledge about the scope of violations for which it was cited two years later. We thus do not agree that the Commission made the factual finding to which the Secretary refers. Moreover, if the Commission's opinion is interpreted as containing such a finding, we hold that the finding is not supported by substantial evidence. Certainly no such evidence is mentioned by the Commission on the cited page of its opinion, and the Secretary has not called such evidence to our attention.

### C.

In order to prevent any misunderstanding of the scope of our holding, we wish to make its limits clear. We do not hold that the 1993 citation could not have cited Alden Leeds for categorical storage practices. We appreciate the force of the Secretary's argument that the purposes of the Act would be thwarted if an employer like Alden Leeds could escape an FTA violation (as opposed to a repeated violation) simply by, for example, moving the location of a pile of chemicals that was previously cited. Such an employer could simply roll barrels from a pile previously cited as too high to a second pile (not previously cited), building this second pile above the height limit. In this manner, the same pile could never be cited in two consecutive inspections, thus ever eluding an FTA notification. We have no doubt that 29 U.S.C. § 666(d) was not intended to permit such evasive maneuvers.

We appreciate the possibility, which the Secretary's brief highlights, that Alden Leeds may have persisted during the relevant period in certain *types* or *categories* of improper storage practices. The Secretary's brief notes that the 13 infractions cited in 1993 can be grouped into seven distinct categories, *see supra*, and that the 33 infractions identified during the reinspection fall into six of the same seven categories. The 1993 citation, however, did not give Alden Leeds adequate notice that it would be subject to an FTA notification if it did not correct these *categories* of improper storage practices, as opposed to the specific instances of improper storage that the citation listed. Our holding is based on the specific wording of the 1993 citation and the broad reading of that wording that the Commission adopted. That interpretation, we hold, is arbitrary and capricious and cannot be sustained.

### III.

For the foregoing reasons, the petition for review is granted, and the decision of the Commission is reversed.