*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0325p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ELAINE L. CHAO, Secretary of Labor,

*Petitioner,*

*v.*

No. 07-3810

OCCUPATIONAL SAFETY AND HEALTH REVIEW
COMMISSION, MANGANAS PAINTING CO., INC.,

*Respondents.*

---

On Petition for Review of the Final Order of
the Occupational Safety & Health Review Commission.
Nos. 95-0103; 95-0104.

Argued: July 22, 2008

Decided and Filed: August 29, 2008

Before: COLE and GRIFFIN, Circuit Judges; SARGUS, District Judge.*

---

## COUNSEL

**ARGUED:** Ronald J. Gottlieb, U.S. DEPARTMENT OF LABOR, Washington, D.C., for
Petitioner. **ON BRIEF:** Ronald J. Gottlieb, Charles F. James, U.S. DEPARTMENT OF LABOR,
Washington, D.C., for Petitioner.

---

## OPINION

---

GRIFFIN, Circuit Judge. The Secretary of Labor petitions this court for review of a final
order of the Occupational Safety and Health Review Commission. The Commission affirmed in
part and reversed in part a decision by an Administrative Law Judge, who affirmed the majority of
citations issued to respondent Manganas Painting Co., Inc. by the Occupational Safety and Health
Administration following a 1994 inspection of a worksite on the southbound structure of the
Jeremiah Morrow Bridge. Although the Commission's order adjudicated numerous citations issued
to Manganas Painting, the Secretary's petition appeals only three citations for unguarded scaffolds
that were vacated by the Commission.

---

*The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting
by designation.

In a 2-1 decision, the Commission held that these citations were barred by § 10(b) of the Occupational Safety and Health Act of 1970 ("the Act"), 29 U.S.C. § 659(b), because a 1993 citation for the same unguarded scaffold condition, arising out of an inspection of the northbound structure of the Morrow Bridge, was pending before the Commission at the time these 1994 citations were issued for the southbound bridge. Commissioner Rogers dissented on the basis that because the citations issued in 1993 and 1994 arose at separate worksites and at different times, § 10(b) did not bar the 1994 unguarded scaffold citations. We agree with the rationale advocated by the dissent and therefore grant the petition for review, reverse the Commission, and remand for further proceedings regarding the merits of the citations at issue.

I.

Manganas Painting began work removing lead-based paint on the Jeremiah Morrow Bridge in Lebanon, Ohio in 1993, after it entered into a contract with the Ohio Department of Transportation. The Morrow Bridge consists of two parallel bridges: one structure running northbound; the other, southbound. In April 1993, OSHA performed an inspection of the project while Manganas Painting was working on the northbound bridge. Following the inspection, OSHA issued several citations to Manganas Painting, including, *inter alia*, a citation alleging that Manganas Painting had failed to install guardrails on platforms that were located more than 10 feet above the ground level, in violation of 29 C.F.R. § 1926.451(a)(4) (repealed). Manganas Painting timely appealed the citation, and it was ultimately affirmed by the Commission in 2000. *Sec'y of Labor v. Manganas Painting Co.*, 19 O.S.H. Cas. (BNA) 1102 (2000), *aff'd by Manganas Painting Co. v. Sec'y of Labor*, 273 F.3d 1131 (D.C. Cir. 2001).

In December 1994, while Manganas Painting was working on the southbound bridge, OSHA performed another inspection. At the conclusion of this inspection, OSHA issued several new citations, including, *inter alia*, three alleged instances of unguarded scaffolds, in violation of 29 C.F.R. § 1926.451(a)(4).[1] These citations alleged the following violations:

Item 13a. Located under and along the east side of the south bound bridge deck, approximate panel point between U38-L38, an employee was observed working from a pic scaffold spray painting a column and the upper cord or steel area without standard guardrails or equivalent, exposing the employee to perimeter exterior falls in excess of 100' and interior falls of approximately 30'.

Item 13b. Employees were exposed to a fall in excess of 140' while using the scaffold pic adjacent to the ladder suspended over the side of the bridge outside the containment area south of pier 4 in that there were no guard rails on the pic.

Item 13c. Located under and along the east side of the south bound bridge deck approximate panel point U34, employees were working from a pick scaffold without standard guardrails or equivalent exposing employees to perimeter exterior falls in excess of 100' and interior falls in excess of 30'.

---

[1] At the time of the inspection in 1994, the regulation provided in pertinent part:

(4) Guardrails and toeboards shall be installed on all open sides and ends of platforms more than ten (10) feet above the ground or floor, except needle beam scaffolds and floats . . . . Scaffolds four (4) feet to ten (10) feet in height, having a minimum horizontal dimension in either direction of less than 45 inches, shall have standard guardrails installed on all open sides and ends of the platform.

Manganas Painting timely appealed, resulting in a decision by an administrative law judge vacating the citations on the basis that these violations were duplicative of other citations issued during the 1994 inspection of the southbound bridge.**2**

On review, the Commission affirmed the ALJ's decision, but on different grounds. The Commission majority held that section 10(b) of the Act barred the Secretary from citing Manganas Painting for failing to guard pick scaffolds at the bridge worksite because a 1993 citation for the same condition relating to the northbound bridge was pending before the Commission at the time these alleged violations were cited in December 1994. The Commission reasoned:

> As a result of the April 1993 inspection of the bridge worksite, OSHA cited Manganas for a violation of § 1926.451(a)(4), the same scaffolding standard cited here. The 1993 citation was based on Manganas' failure "to install guardrails on a painter's pick." *Manganas Painting Co.*, 19 BNA OSHC at 1103, 2000 CCH OSHD at p. 48,767. It is undisputed that at the time OSHA initiated the 1994 inspection and issued the resulting citations, the 1993 citation had been timely contested by Manganas and a hearing in the matter had yet to commence. In fact, the judge who presided over the 1993 matter did not issue his decision until after a decision was issued in the current cases, and his decision did not become a final order of the Commission until 2000.
>
> *While the alleged scaffolding violations cited in 1993 and 1994 were observed at what we find to be essentially two different worksites*, the citations "covered the same condition" in that each item was based on Manganas' failure to guard the same type of pick scaffold used throughout the bridge worksite during both painting seasons.

(emphasis added)

The Secretary timely filed a petition for review with this court, limited to the Commission's decision regarding these citations. Neither Manganas Painting nor the Commission has filed a responsive brief in opposition.

## II.

In reviewing an agency's interpretation of a statute that it is charged with administering, we apply the familiar two-step process announced by the Supreme Court in *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984). "The initial question under step one of the *Chevron* framework is 'whether Congress has directly spoken to the precise question at issue' by employing precise, unambiguous statutory language." *Alliance for Community Media v. F.C.C.*, 529 F.3d 763, 776-77 (6th Cir. 2008) (citing *Chevron*, 467 U.S. at 842). If the text of the statute is unambiguous and, therefore, the "intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Jewish Hosp., Inc. v. Sec'y of Health & Human Servs.*, 19 F.3d 270, 273 (6th Cir. 1994) (citing *Chevron*, 467 U.S. at 842-43). If, however, "we determine that Congress has not directly addressed the precise question at issue, that is, that the statute is silent or ambiguous on the specific issue, we must determine 'whether the agency's answer is based on a permissible construction of the statute.'" *Battle Creek Health Sys. v. Leavitt*, 498 F.3d 401, 408-09 (6th Cir. 2007) (quoting *Jewish Hosp., Inc.*, 19 F.3d at 273). Where the agency's interpretation of the statute does not take the form of a regulation issued

---

**2**The ALJ also held with respect to Items 13b and 13c that OSHA had "made no showing . . . that the pics were intended or used for any purpose other than access." Thus, the ALJ reasoned, the cited pics were not "platforms" within the definition of the Act.

following notice and comment rulemaking, but rather is offered through an informal medium – such as an opinion letter, policy statement, or agency manual – *Chevron*-style deference is not warranted, and we apply the less deferential *Skidmore*[3] review to the agency's interpretation. *Id.* at 409. *See also infra* at III.C.

The threshold issue, then, is whether § 10(b) is ambiguous. Section 10(b) of the Act provides in pertinent part:

> If the Secretary has reason to believe that an employer has failed to correct *a violation for which a citation has been issued* within the period permitted for its correction (*which period shall not begin to run until the entry of a final order by the Commission in the case of any review proceedings under this section initiated by the employer in good faith and not solely for delay or avoidance of penalties*), the Secretary shall notify the employer by certified mail of such failure and of the penalty proposed to be assessed under section 666 of this title by reason of such failure, and that the employer has fifteen working days within which to notify the Secretary that he wishes to contest the Secretary's notification or the proposed assessment of penalty.

29 U.S.C. § 659(b) (emphasis added).

We conclude that the statute is ambiguous regarding the meaning of "a violation for which a citation has been issued." § 659(b). We have explained previously that "[l]anguage is ambiguous when 'to give th[e] phrase meaning requires a specific factual scenario that can give rise to two or more different meanings of the phrase.'" *Alliance*, 529 F.3d at 777 (quoting *Beck v. City of Cleveland*, 390 F.3d 912, 920 (6th Cir. 2004)). Here, there are at least two possible constructions of the pertinent phrase. It could refer, as the Secretary insists, to each instance in which an OHSA regulation is breached. The statute's use of the term "violation" could also be read plausibly, however, to apply only to the regulation that was allegedly transgressed, rather than to each individual act. For example, under the former construction of the statute, three separate, individual violations of 29 C.F.R. § 1926.451(a)(4) occurring at different locations on different days would result in three "violations for which a citation has been issued." Under the latter reading, however, one "violation for which a citation has been issued" would result, as only a single regulation would have been alleged to have been breached.

Because § 10(b) permits at least two possible interpretations, we conclude that the statute is ambiguous regarding the meaning of a "violation for which a citation has been issued." Accordingly, under our two-step analysis required by *Chevron*, we turn to the agency's interpretation of the statute for guidance.

III.

A.

Finding "that personal injuries and illnesses arising out of work situations impose a substantial burden upon . . . interstate commerce in terms of lost production, wage loss, medical expenses, and disability compensation payments," Congress enacted the Occupational Safety and Health Act in order to "provide for the general welfare [by] assur[ing] so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources," 29 U.S.C. § 651(a)-(b). To carry out the objectives of the Act, Congress allotted

---

[3] *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

responsibility for executing the Act to two administrative actors:  the Secretary and the Commission, a three member board appointed by the President with the advice and consent of the Senate, assigned to "carry out adjudicatory functions" under the Act.  29 U.S.C. §§ 651(b)(3).  *See Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 147-48 (1991) (describing administrative framework); *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 221-22 (2d Cir. 2002) (same).

The Secretary is authorized "to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce," § 651(b)(3), and to enforce these standards by "inspect[ing] and investigat[ing] during regular working hours and at other reasonable times . . . any such place of employment and . . . question[ing] privately any such employer, owner, operator, agent or employee."  29 U.S.C. § 657(a)(2).  If, during such an inspection, the Secretary (or his or her representative) believes that an employer has violated an OSHA regulation, the Secretary is empowered to issue a citation to the employer, describing "with particularity the nature of the violation, including a reference to the provision of the [Act] . . . alleged to have been violated."  *Id.* at § 658(a).  The employer then has fifteen days, running from the date of receipt of the citation, to appeal the citation.  *Id.* at § 659(a).

If the employer files a timely notice of its intent to challenge the citation, "the Commission shall afford an opportunity for a hearing" and "shall thereafter issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty . . . ," *id.* at § 659(c).  The initial report by the ALJ becomes the final order of the Agency unless any member of the Commission grants discretionary review of the ALJ's decision.  *Id.* at § 661(j).  Either party – the Secretary or the employer charged with citations – may appeal the order of the Commission to "any United States court of appeals for the circuit in which the violation is alleged to have occurred" or "in the Court of Appeals for the District of Columbia Circuit," *id.* at § 660(a).

B.

It is well-settled that appellate courts owe deference to an agency's interpretation of its authorizing statute when the statute is ambiguous.  *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 907 (6th Cir. 2008) (citing *Chevron*, 467 U.S. at 837).  OSHA's dual-actor framework raises the question of which OSHA entity – the Secretary or the Commission – is entitled to deference, and, similarly, how much deference that entity is entitled.  In *Martin*, the Supreme Court considered whether a reviewing court should defer to the Secretary or the Commission when the two actors provided "reasonable but conflicting interpretations" of an ambiguous *regulation* under the Act.  *Martin*, 499 U.S. at 149.  Reasoning that because the Act assigns the Secretary the duty to promulgate and enforce OSHA regulations, while the Commission is delegated "nonpolicy-making adjudicatory powers," the Court concluded that the Secretary was in the "better position than is the Commission to reconstruct the purpose" of OSHA regulations.  *Id.* at 152-54.  Ultimately, the Court held that where both the Commission and the Secretary offer competing reasonable interpretations of an OSHA regulation, "the reviewing court may not prefer the reasonable interpretations of the Commission to the reasonable interpretations of the Secretary . . . ."  *Id.* at 158.

Left undecided by *Martin*, however, is to whom does a reviewing court defer when the Secretary and Commission offer conflicting interpretations of a provision of the Act.  The Second Circuit Court of Appeals' opinion in *Russell P. Le Frois Builder* ("*Russell*") is instructive on this question.  In *Russell*, the Second Circuit faced competing interpretations of the Act concerning the Commission's ability to exercise jurisdiction over an employer's untimely challenge to OSHA citations.  *Russell*, 291 F.3d at 221.  In deciding which agency actor's interpretation warranted deference, the Second Circuit observed the Supreme Court's holding in *United States v. Mead Corporation*, 533 U.S. 218, 226-27 (2001), that "administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority

to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Russell*, 291 F.3d at 226. Reasoning that, as explained by the Court in *Martin*, Congress delegated rule-making authority under the Act to the Secretary, rather than the Commission, the *Russell* court held that "the Secretary not the Commission[] has authority to interpret the statute . . . and we should therefore defer to the views of the Secretary rather than the Commission." *Russell*, 291 F.3d at 226-27.

We agree with the Second Circuit that the Secretary, rather than the Commission, warrants deference in her interpretation of the Act. In *Martin*, the Court pointed out that Congress did not invest the Commission with the power to make law or policy, 499 U.S. at 154, and repeatedly emphasized the Commission's role as limited to serving as a "neutral arbiter." *Id.* at 152 (quoting *Cuyahoga Valley Ry. Co. v. United Transp. Union*, 474 U.S. 3, 7 (1985)). In contrast, the Court observed that the Secretary is empowered with the ability to promulgate OSHA rules and standards. *Martin*, 499 U.S. at 152. Moreover, as the *Martin* Court noted, because she is empowered to write and enforce OSHA standards, the Secretary "comes into contact with a much greater number of regulatory problems than does the Commission" and, as a result, "the Secretary is more likely to develop the expertise relevant to assessing the effect of a particular regulatory interpretation." *Id.* at 152-53. Thus, applying the Court's opinion in *Mead* and *Martin*, we choose to follow *Russell* and defer to the Secretary, rather than the Commission, in her interpretation of the Act.[4]

C.

Next, we must decide the degree of deference owed the Secretary's interpretation of § 10(b) – specifically, whether we should give full *Chevron* deference or rather the more limited *Skidmore* deference. In contrast to the deferential review required by *Chevron*, under *Skidmore*, we give an agency interpretation deference that "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140. Because the Secretary's interpretation of § 10(b) is not the product of notice-and-comment rulemaking, we conclude that the less-deferential *Skidmore* level of review is warranted.

In *Christensen v. Harris County*, 529 U.S. 576, 587 (2000), the Supreme Court explained that, although *Chevron* requires a reviewing court to give effect to an agency's reasonable interpretation (offered in the form of an agency regulation) of an ambiguous statute, such deference is not required where the interpretation is offered via an informal medium – such as an opinion letter, agency manual, policy statement, or enforcement guideline – that lacks the force of law. Here, the Secretary has offered her interpretation of § 10(b) only in her litigation position; she has not pointed to any regulation or any other format that carries the force of law which reflects her interpretation

---

[4] The Secretary begins her discussion of the standard of review with a citation to the APA, 5 U.S.C. § 706, for the proposition that the "Commission's legal conclusions may be set aside if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" The APA provides that the arbitrary and capricious standard of review is to be applied to "agency action." 5 U.S.C. § 706(2). Under normal circumstances, where the agency speaks with a single voice – when the Secretary and the Commission agree on an interpretation of the Act, or where (as is the case with most agencies) enforcement and adjudicative powers are combined in a single administrative authority – the arbitrary and capricious standard can be applied consistently. Here, however, there are two administrative actors offering conflicting "acts," and the Supreme Court has instructed that the actor to whom deference is owed is the Secretary, rather than the Commission. *Martin*, 499 U.S. at 152-53. Thus, it would run counter to both the statutory scheme of the Act and the Court's instruction in *Martin* to apply the deferential, arbitrary, and capricious standard of review to the Commission's legal decision, rather than to defer to the Secretary's interpretation of § 10(b).

of § 10(b).[5]  Accordingly, under *Christensen*, we hold that the Secretary's interpretation of § 10(b) is entitled to deference only to the extent that it has the power to persuade.

IV.

Although the Secretary is entitled to only *Skidmore* deference regarding her position, we conclude that her interpretation of § 10(b) is a compelling, reasonable construction of the statute. As the administrative actor charged with enforcing the Act, the Secretary is "'in the best position' to develop 'historical familiarity and policymaking expertise'" in applying § 10(b). *Russell*, 291 F.3d at 228 (quoting *Martin*, 499 U.S. at 153). On this issue, the Secretary has repeatedly advanced the interpretation that § 10(b) does not prohibit her from alleging multiple violations of the same regulation where the violations occurred at different places or different times. *See, e.g., Sec'y of Labor v. MJP Constr. Co., Inc.*, 19 O.S.H. Cas. (BNA) 1638 (2001) (upholding multiple violations under same regulation where citation items alleged violations occurring on different dates); *Sec'y of Labor v. J.A. Jones Constr. Co.*, 15 O.S.H. Cas. (BNA) 2201 (1993) (holding that the Secretary may appropriately cite separate violations for each individual instance of improper fall protection where each alleged instance of violation involves either a different floor or a different location on each floor). *See also Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993) ("The consistency of an agency's position is a factor in assessing the weight that position is due").

Most importantly, the Secretary's position is consistent with the text of the Act. The text of § 10(b) speaks in terms of a singular, discrete violation – providing that "[i]f the Secretary has reason to believe that an employer has failed to correct *a violation* for which *a citation* has been issued . . . . " § 659(b) (emphasis added). The citations at issue in this case were likewise written in singular terms, referring to individual violations of 29 C.F.R. § 1926.451(a)(4) by specific Manganas Painting employees. Had Congress intended for the expansive interpretation of "a violation" that the Commission applied, it is likely that it would have referred to a "*type* of violation for which a citation has been issued" or a "practice for which a citation has been issued." *See Alden Leeds, Inc. v. Occupational Safety and Health Review Comm'n*, 298 F.3d 256, 262-63 (3d Cir. 2002) (distinguishing citations alleging discrete violations and citations alleging violative practices, and pointing out that Secretary could have cited employer for categorical practices, rather than for discrete, individual violations). Instead, the statute refers only to "a violation," and we "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Thus, we hold that the Secretary's interpretation of § 10(b) is consistent with the text of the statute.

Finally, we emphasize the limits of our opinion. The Commission found, and substantial evidence supports the factual finding, that the 1993 and 1994 citations occurred at two separate worksites, one year apart from each other. In this regard, we review for clear error the factual findings made by the Commission. *Fields Excavating, Inc. v. Sec'y of Labor*, 383 F.3d 419, 420 (6th Cir. 2004); *CMC Elec., Inc. v. OSHA*, 221 F.3d 861, 865 (6th Cir. 2000). We conclude the Commission's finding of two different worksites is supported by substantial evidence. *See Nat'l Eng'g & Contracting Co. v. Herman*, 181 F.3d 715, 721 (6th Cir. 1999) (explaining that "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted).

Thus, we are not called upon to decide, and express no opinion on the question, whether § 10(b) bars successive penalties for the same violation at the same worksite. Rather, we decide only

---

[5]By contrast, where an OSHA regulation is at issue, rather than a provision of the Act, the Secretary's interpretation of the regulation, even if expressed for the first time as a litigation position, is nevertheless entitled to full *Chevron* deference. *Martin*, 499 U.S. at 156-57.

that where an employer challenges a citation issued by the Secretary, the Secretary is not barred by § 10(b) from issuing a second citation for a violation of the same regulation that occurs at a different worksite at a subsequent time.

V.

For these reasons, we grant the petition for review, reverse the decision of the Occupational Safety and Health Review Commission with respect to citation items 13a-13c, and remand for further proceedings consistent with this opinion.