RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0259p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

PATRICIA D. WATSON,

          *Plaintiff-Appellant,*

    *v.*

HILDA SOLIS, in her official capacity as
SECRETARY OF LABOR, UNITED STATES
DEPARTMENT OF LABOR,

          *Defendant-Appellee.*

No. 10-6382

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 09-00131—Thomas W. Phillips, District Judge.

Argued: March 6, 2012

Decided and Filed: August 10, 2012

Before: MARTIN, SUTTON, and BALDOCK,[*] Circuit Judges.

_____

## COUNSEL

**ARGUED:** Douglas C. Weinstein, SLOVIS, RUTHERFORD & WEINSTEIN, P.L.L.C., Knoxville, Tennessee, for Appellant. Anisha Dasgupta, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Douglas C. Weinstein, SLOVIS, RUTHERFORD & WEINSTEIN, P.L.L.C., Knoxville, Tennessee, for Appellant. Anisha Dasgupta, Danielle Carim Gray, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

[*] The Honorable Bobby R. Baldock, Circuit Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

---

**OPINION**

---

BOYCE F. MARTIN, JR., Circuit Judge.     Patricia Watson challenges the Department of Labor's interpretation and application of the Energy Employees Occupational Illness Compensation Program Act of 2000, 42 U.S.C. § 7384 *et seq.*, which provides benefits to individuals or their survivors for illnesses incurred from exposure to toxic substances while working for the Department of Energy or certain related entities.  Watson's father died of complications from Hodgkin's disease in 1964; Watson filed a claim in 2002 for survivor benefits under the Act.  The Department of Labor denied Watson's claim, finding that she was not "incapable of self-support" and therefore not entitled to benefits under the Act as a "covered child."  Watson filed a complaint in the district court seeking review of the Department of Labor's decision.  The district court denied her motion for summary judgment and dismissed her case with prejudice.  Watson appeals, arguing that the district court erred in concluding that the Department of Labor did not act arbitrarily or capriciously in denying her claim for benefits.  For the following reasons, we **AFFIRM** the judgment of the district court.

I.

Watson's father, Ethrage J. Hickle, worked as a contractor for the Department of Energy from 1954 to 1962.  Hickle died of complications from Hodgkin's disease in 1964.

Congress enacted the Energy Employees Occupational Illness Compensation Program Act in 2000 "to provide benefits to employees with illnesses caused by exposure to radiation and other toxic substances in the course of their work for the Department of Energy . . . or its predecessor agencies, and certain of its contractors and subcontractors."  *Hayward v. U.S. Dep't of Labor*, 536 F.3d 376, 377 (5th Cir. 2008) (per curiam).  Under the Act, "covered employees or their eligible survivors may receive compensation in a lump sum payment of $150,000 plus medical benefits for covered

individuals." *Harger v. Dep't of Labor*, 560 F.3d 1071, 1073 (9th Cir. 2009), *abrogated on other grounds*, 569 F.3d 898 (9th Cir. 2009). A covered employee's child is eligible for survivor compensation as a "covered child," 42 U.S.C. § 7385s-3(d)(2), if said child:

> [A]s of the employee's death—
>    (A) had not attained the age of 18 years;
>    (B) had not attained the age of 23 years and was a full-time student who had been continuously enrolled as a full-time student in one or more educational institutions since attaining the age of 18 years; or
>    (C) had been incapable of self-support.

When her father died, Watson was nineteen years old and not a full-time student. At the time of Hickle's death, Watson lived at her parents' residence, worked as a waitress, relied on her parents for economic support, and was listed as a dependent on her parents' income tax returns. She had left high school in the ninth grade due to a pregnancy, and in 1963—the year before her father's death—she began attending night school in an attempt to complete her high school education. She filed claims for survivor benefits with the Department of Labor in 2002.

Watson received a lump-sum compensation payment of $150,000 as a survivor of a covered employee with an occupational illness resulting from radiation exposure under a different section of the Act than that at issue here; she later filed the present claim under 42 U.S.C. § 7385s-3(d)(2)(C) for further compensation as a "covered child" under the Act. In her claim before the Department of Labor, Watson argued that she is eligible for compensation under the Act as a "covered child" because she was "incapable of self-support" at the time of Hickle's death. The Department of Labor found that she was not "incapable of self-support" because she did not provide evidence that she was "physically or mentally incapable of self-support," as required by the Department's Procedure Manual to obtain coverage under section 7385s-3(d)(2)(C). The Department denied her "covered child" claim on this basis. In her action before the district court, Watson challenged the Department's interpretation of "incapable of self-support," claiming that the Department impermissibly required a showing of physical or mental

incapability.  The district court denied her motion for summary judgment, finding that the Department of Labor provided a persuasive interpretation of the statute and did not act arbitrarily or capriciously in determining that Watson failed to provide sufficient evidence of being "incapable of self-support."  Watson appeals the denial of her summary judgment motion.

## II.

We review the district court's denial of summary judgment de novo.  *Elkins v. Summit Cnty., Ohio*, 615 F.3d 671, 674 (6th Cir. 2010).  Summary judgment is appropriate if the materials in the record show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party."  *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 479 (6th Cir. 2012) (quoting *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003)) (internal quotation marks omitted).

Under section 7385s-6(a) of the Act, a court reviewing a federal agency's final decision concerning survivor benefits under the Act may "modify or set aside such decision only if the court determines that such decision was arbitrary and capricious." "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action."  *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011) (internal quotation marks omitted).  "Under this deferential standard, when it is possible to offer a reasoned explanation, based on the evidence for a particular outcome, that outcome is not arbitrary or capricious."  *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009).

## III.

In *Chao v. Occupational Safety & Health Review Commission*, 540 F.3d 519, 523 (6th Cir. 2008) (footnote, citations, and internal quotation marks omitted), we laid out the following process by which we review a federal agency's interpretation of a statute:

In reviewing an agency's interpretation of a statute that it is charged with administering, we apply the familiar two-step process announced by the Supreme Court in *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984). The initial question under step one of the *Chevron* framework is whether Congress has directly spoken to the precise question at issue by employing precise, unambiguous statutory language. If the text of the statute is unambiguous and, therefore, the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, we determine that Congress has not directly addressed the precise question at issue, that is, that the statute is silent or ambiguous on the specific issue, we must determine whether the agency's answer is based on a permissible construction of the statute.

We agree with the district court that, under the first step of *Chevron*, the term "incapable of self-support" in the Act is ambiguous. "[I]ncapable of self-support" could mean lacking the financial capacity for independent support, or it could mean lacking physical or mental attributes necessary to support oneself. *See Alliance for Cmty. Media v. FCC*, 529 F.3d 763, 777 (6th Cir. 2008) ("Language is ambiguous when to give the phrase meaning requires a specific factual scenario that can give rise to two or more different meanings of the phrase." (alteration and internal quotation marks omitted)).

Accordingly, we move on to determine whether the Department of Labor's interpretation of the Act is permissible. Because the Department's interpretation of "incapable of self-support" is found within an agency manual, we review its permissibility under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference. Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore* . . . , but only to the extent that those interpretations have the 'power to persuade.'" (citations omitted)). The weight we give the Department of Labor's interpretation "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it *power to persuade*, if lacking

power to control." *Skidmore*, 323 U.S. at 140 (emphasis added); *see also Chao*, 540 F.3d at 527 (holding that an agency's interpretation is "entitled to deference only to the extent that it has the power to persuade").

Evaluating the Department of Labor's interpretation under *Skidmore*, we find that the Department's interpretation of section 7385s-3(d)(2)(C) to cover only those who are "physically or mentally incapable of self-support" is persuasive. The Department of Labor's interpretation of the term "incapable of self-support" is consistent with other pronouncements by Congress. After a protracted debate among the states in the mid-twentieth century, a consensus arose that workers' compensation should cover mental disabilities, *see generally* 3 *Larson's Workers' Compensation Law* § 56.04. Congress adopted the majority view by expressly including mental disabilities in many of its federal benefits programs at that time, inserting the phrase "physical or mental disabilities" to make clear that it was deviating from the traditional rule of only allowing benefits for physical injuries. *See, e.g.*, Federal Employees' Compensation Act, 5 U.S.C. § 8110(a)(3)(B) (providing for augmented compensation for dependents, including "an unmarried child . . . who is [*inter alia*] . . . over 18 years of age and incapable of self-support because of physical or mental disability"). By the time section 7385s-3(d)(2)(C) of the Act was enacted by Congress in 2000, it was already well-established that federal compensation programs were generally intended to cover dependents incapable of self-support due to "physical or mental disability." The Department of Labor's definition of "incapable of self-support" is consistent with other federal statutes and compensation programs. *See, e.g.*, *id.*; Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 902(14) (providing that "child" means an individual over the age of 18 who is "wholly dependent upon the employee and incapable of self-support by reason of mental or physical disability"); Public Safety Officers' Death Benefits, 42 U.S.C. § 3796b(3) (defining "child" as "any . . . child . . . of a deceased public safety officer who, at the time of the . . . officer's death, is [*inter alia*] . . . over 18 years of age and incapable of self-support because of physical or mental disability").

The Department of Labor's interpretation of "incapable of self-support" is persuasive for reasons beyond its consistency with other congressional pronouncements and thoroughly considered nature. A definition of "incapable of self-support" that includes a physical or mental component is persuasive in light of common definitions of "incapable." *See, e.g.*, Webster's Third New Int'l Dictionary 1141 (2002) (defining "incapable" as "suffering from such a degree of mental or physical weakness as to require supervision of one's affairs by a court"); Oxford English Dictionary (online ed. 2012) (defining "incapable" as "[n]ot having the capacity, power, or fitness for a specified function, action, etc.; unable."). Contrary to Watson's argument that the absence of the phrase "physical or mental disability" from subsection (d)(2)(C) should be read to mean the Act covers a larger group of people than similar acts that do not omit this phrase, the absence of the phrase may reflect the recent understanding that "incapable" includes mental disabilities. We decline to interpret the absence of that phrase alone as a reflection of Congress's intent to impliedly expand benefits to an entirely new and undefined group of people. Additionally, many full-time students between the ages of eighteen and twenty-three do not support themselves economically, so they too are "incapable of self-support" under Watson's definition. Thus, a more sensible reading of subsection (d)(2)(C)—that "incapable" means physically or mentally disabled—avoids making subsection (d)(2)(B) superfluous. *Cf. Kungys v. United States*, 485 U.S. 759, 778 (1988) (describing the "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant.").

The Department of Labor's interpretation creates a class of identifiable beneficiaries that is logical and consistent with other federal statutes; Watson does not offer a reasonable alternative interpretation of the Act. Watson's proposed interpretation of "incapable of self-support" offers no limiting principle and instead creates an unbounded definition of the survivors potentially covered by the "covered child" clause of the Act. Watson's broad reading is implausible, as it would expand the definition of covered survivors beyond those reasonably intended to be covered and beyond the financial capacity of the recovery fund itself. We are not willing to read into the Act such a sharp break from our past practice in the evaluation of incapacity without a clear

statement of such intent by Congress.  *Cf. OfficeMax, Inc. v. United States*, 428 F.3d 583, 590 (6th Cir. 2005) (rejecting government's interpretation of a tax provision in part because it relied on an implausible understanding of long-distance telephone billing practices).  For these reasons, we find the Department of Labor's interpretation of the Act persuasive.

Having found that the Department of Labor's interpretation is persuasive and entitled to deference under *Skidmore*, we now determine whether the Department of Labor acted arbitrarily or capriciously in denying benefits to Watson under section 7385s-3(d)(2) of the Act.  The Department of Labor denied benefits to Watson under this section because she failed to submit evidence that her physical or mental condition made her incapable of self-support; she submitted only evidence of her economic state, despite a request from the Department of Labor to provide records of her medical or physical limitations.  Because such evidence is required by the Department of Labor to demonstrate qualification for coverage under section 7385s-3(d)(2)(C), and because Watson failed to provide such evidence, we find that the Department of Labor did not act arbitrarily or capriciously in denying Part E benefits to Watson.  *See Cox*, 585 F.3d at 299 ("[W]hen it is possible to offer a reasoned explanation, based on the evidence for a particular outcome, that outcome is not arbitrary or capricious.").

IV.

Accordingly, the judgment of the district court is **AFFIRMED**.