RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0395P (6th Cir.)
File Name: 02a0395p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ELAINE L. CHAO, Secretary of
Labor, United States
Department of Labor,
　　　　　*Plaintiff-Appellee,*

　　　　　*v.*

TRADESMEN INTERNATIONAL,
INC.,
　　　　　*Defendant-Appellant.*

No. 00-4434

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-02973—Solomon Oliver, Jr., District Judge.

Argued: April 30, 2002

Decided and Filed: November 15, 2002

Before: SUHRHEINRICH and GILMAN, Circuit Judges;
HOOD, District Judge.[*]

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the
Eastern District of Kentucky, sitting by designation.

1

---

**COUNSEL**

**ARGUED:**    Vincent T. Norwillo, TRADESMEN INTERNATIONAL, INC., Solon, Ohio, for Appellant. Joan Brenner, UNITED STATES DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Appellee. **ON BRIEF:** Vincent T. Norwillo, TRADESMEN INTERNATIONAL, INC., Solon, Ohio, for Appellant. Joan Brenner, Paul Frieden, UNITED STATES DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Appellee.

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge. Tradesmen International, Inc. appeals from the order of the district court denying its motion for summary judgment and granting the Secretary of Labor's motion. The issue in this case is whether an employee's attendance at a safety training course is "involuntary" and within the meaning of 29 C.F.R. §§ 785.27-.28 (2002) and therefore compensable under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), where the employer makes the training a precondition of employment, but allows the employee to complete the course within a reasonable time after commencing employment, yet also establishes that the employee will be terminated if he or she does not complete the course in a timely manner. The district court held that the employees' attendance in this case was involuntary and that the employer was therefore required to compensate them for time spent attending the course. For the following reasons, we **REVERSE.**

## I.

The facts are basically undisputed. Tradesmen is a skilled labor leasing company that provides a complete range of

agree that, to read the regulation as covering this situation is inconsistent with the purpose of the Act.

## III.

The judgment of the district court is **REVERSED**, and the matter **REMANDED** with instructions to enter summary judgment in favor of Tradesmen.

---

ABA, THE FAIR LABOR STANDARDS ACT, 20 & n.53. In *Steiner v. Mitchell*, 350 U.S. 247 (1956), the Supreme Court held that workers in a battery plant must be paid for time spent changing clothes and showering, because during their shifts, the workers were exposed to dangerously caustic and toxic materials. The Supreme Court held that, notwithstanding Section 4 of the Portal-to-Portal Act, the time spent changing clothes and showering was closely related to the employee's principal activity and indispensable to its performance. In *Mitchell v. King Packing Co.*, 350 U.S. 260 (1956), the Supreme Court applied *Steiner* to hold that knifemen in a meat packing plant, who were required to keep their knives razor-sharp to achieve proper performance of their butchering duties, were entitled to compensation for the time spent sharpening their knives. The Court reasoned that the knife-sharpening activities were an integral part of, and indispensable to, the principal activities for which the knifemen were employed. *Id.* at 261-63.

In short, although the Portal-to-Portal Act limits coverage under the FLSA, it did not eliminate coverage for all preliminary and postliminary activity, but has left it up to the courts to make that assessment on a case-by-case basis.

workers to construction contractors on an as-needed basis. It leases its employees, who are all skilled tradesmen ("field employees"), to various kinds of construction contractors. Tradesmen does not exercise control of, or supervision over, the work of its leased employees.

Tradesmen imposes a specific safety training prerequisite as part of its hiring criteria for field employees. That is, to receive a job offer from Tradesmen, field employee candidates must have completed an Occupational Safety and Health Administration ("OSHA") 10-hour general construction safety course. The OSHA course is an instructional program on general construction job site safety. OSHA determines the specific construction safety standards to be presented by this course and issues the written materials on the construction topics to which the selected safety standards apply. Tradesmen does not have any input on the safety standards covered by the course and does not edit the course to address any particular work environment of the company's employees.

Field employee candidates learn of Tradesmen's safety prehire requirement during their employment interview. Candidates are asked whether they have had any construction safety training, and specifically, whether the training included completion of an OSHA course. With proof of attendance of the OSHA course, field employee candidates are deemed immediately eligible for hire if otherwise qualified for available work.

Candidates who have not attended the OSHA course are informed that Tradesmen requires completion of the course as a condition of hire. However, applicants are also told that they may be nonetheless offered immediate employment if they commit to registering for the OSHA course within sixty days and completing the course within a reasonable time.

Candidates who choose this option may attend either an OSHA course sponsored by an instructional institution or the class offered by Tradesmen at its field offices. Once candidates who are otherwise qualified for work agree to

satisfy the company's prehire safety training criteria, Tradesmen extends employment offers to them.

Tradesmen presents its OSHA course over four separate 2½-hour sessions. These classes are held in the evening, outside of regular working hours. Employees perform no work in the class and are not compensated for the time spent in the class. The class instruction provides only knowledge of general construction safety standards; it has no effect upon the trade skills of any field employee. If an employee does not complete the course within sixty days after being hired, he or she will not be sent out on new assignments, effectively terminating employment.

In 1998, the Cleveland field office of the Department of Labor ("DOL") began investigating Tradesmen. The DOL determined that the employees' attendance was involuntary, and therefore found that Tradesmen had violated the overtime provisions of the FLSA by failing to provide overtime compensation for attending the course when attendance time combined with regular work hours exceeds forty hours of work time during a week.

The DOL based its decision on references to the OSHA course in Tradesmen employment and marketing materials, showing that attendance by Tradesmen employees at the course is solely for the benefit of Tradesmen. For example, the Tradesmen's Field Employee Policy Manual states: "At Tradesmen, we take safety seriously. That is why all of our employees are required to successfully complete a 10-hour OSHA certified construction class." The manual further provides "[a]ll employees are required to have successfully completed a 10-hour course within the first 60 days of employment, [and] may not be sent on new assignments until they complete the 10-hour course."

Marketing materials also include references to the fact that Tradesmen's field employees have taken the OSHA safety course. For instance, a Tradesmen brochure includes the following paragraph, labeled "Safety is a Priority":

---

that employee-trainees were not entitled to overtime compensation for time spent attending required classroom instruction away from the jobsite after working hours because such overtime compensation was not mandated by the Portal-to-Portal Act).

More fundamentally, we think the First Circuit's rulings are consistent with the language and purpose of the Portal-to-Portal Act, which was designed to limit the coverage provided under the FLSA. *See Ballou*, 433 F.2d at 112 & n.4 (citing H.R.Rep.No. 71, Portal-to Portal Act of 1947, Feb. 25, 1947 U.S.Code Congressional Service, p. 1029).[2] We likewise

---

[2]The Portal-to-Portal Act was designed in part to reverse the result of the Supreme Court's decision in *Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680 (1946). In that case, the Supreme Court addressed what constituted working time under the FLSA. The company operated a plant that was approximately one quarter of a mile long. The employees were required to punch a time clock at one end of the building, and then spend anywhere from two to twelve minutes walking to their assigned posts. The employees also spent an additional fourteen minutes before their shift performing preparatory activities for productive work, and another fourteen minutes at the end of each shift to leave their posts and punch out. *Id.* at 682. The Supreme Court held that the time spent walking to and from the employee's assigned work station and the preparatory time required before and after scheduled productive work was compensable under the FLSA. The Court reasoned that the walking time was compensable because it was "under the complete control of the employer" and the employees were "compelled to do so by the necessities of their employer's business." *Id.* at 691. The Court further found the time spent engaging in preparatory activities, such as putting on aprons and overalls and preparing equipment, to be compensable. The Court reasoned that such activities were a necessary prerequisite to productive work and not for the employees' personal convenience. *Id.* at 693.

The legislative history of the Portal-to-Portal Act reveals that one of its major purposes was to reverse the potentially devastating financial impact of *Anderson* on businesses in particular and the threat to the economy as a whole. *See* H.R.Rep.No. 71, Portal-to-Portal Act of 1947, Feb. 25, 1947 in 1947 U.S. Code Congressional Service, p. 1029; *see also* ABA, THE FAIR LABOR STANDARDS ACT, 16-20 (Ellen C. Kearns, *ed.*, 1999).

It is equally clear that Congress still intended activities such as changing clothing and preparing machinery be treated as compensable under the FLSA if they were an integral part of the principal activity. *See*

training requirement until after being hired. Because the training class was a fully disclosed precondition to permanent employment, however, fulfillment of the requirement strikes us as being "voluntary" within the meaning of 29 C.F.R. § 785.27(b).

The *Ballou* court also relied in part on two Supreme Court cases litigated before the Portal-to-Portal Act was enacted, *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), and *Walling v. Nashville, Chattanooga & St. Louis Railway*, 330 U.S. 158 (1947). In those companion cases, the Supreme Court held that the employers who provided training to potential employees were not required under the FLSA to compensate trainees for time spent in the training program. The Supreme Court characterized them as students rather than employees even though they were hired if they successfully completed the program. To justify the exclusion of "students" from coverage under the FLSA, the Supreme Court relied on 29 U.S.C. § 214, which permits employers to pay less than minimum wages to learners and apprentices provided that the Administrator of the Wage and Hour Division of the Department of Labor approved. The *Ballou* court added that "[t]he justification for this provision was and is that apprentices are entitled to be compensated at the minimum wage for the productive work content of their activities but not for the educational or training content which was for their own benefit." *Ballou*, 433 F.2d at 111. Thus, in *Ballou*, the employer did not violate the FLSA, as amended by the Portal-to-Portal Act, by compensating its apprentices in their status as workers but not compensating them in their status as students. *Id.* at 112.

In further support, the *Ballou* court relied on 29 C.F.R. § 785.32, which provides that employers do not have to pay apprentices for supplemental training programs if the training programs substantially comply with the fundamental standards of the Bureau of Apprenticeship and Training, and such time does not involve productive work of the apprentice's regular duties. *Id. See also Merrill v. Exxon Corp.*, 387 F. Supp. 458, 460-66 (S.D. Tex. 1974) (holding

Tradesmen International is committed to safety. We have a certified OSHA instructor on staff to assist you in keeping within OSHA regulations to avoid costly site violation fines and maintain a safer working environment. We also offer a wide range of safety classes which are available to all our customers and our employees.

In addition, a phone message played whenever a caller is placed on hold by Tradesmen emphasizes safety as a goal of Tradesmen. It states in part, "Tradesmen International understands the importance of safety on a construction job site and has gone to great lengths to ensure the safety compliance for both its employees and clients. For our employees, completion of an OSHA approved ten-hour safety certification course with quarterly updates is strongly encouraged."

The DOL filed this action under 29 U.S.C. § 217, alleging that Tradesmen violated the FLSA by failing to compensate its employees for their time spent in attending the OSHA course. The DOL sought an injunction to prevent future violations of the overtime provisions of the FLSA, 29 U.S.C. § 215(a)(2), and to recover unpaid overtime compensation allegedly due to Tradesmen's employees. The parties filed cross-motions for summary judgment. The district court denied Tradesmen's motion and granted the DOL's. The court enjoined Tradesmen "from failing to pay overtime compensation to employees who attend the OSHA training course while employed by the company," and further ordered Tradesmen "to compute and pay all overtime back wages from two years prior to the date of the Complaint until the present to those Tradesmen employees who took the OSHA course while employed by [Tradesmen]."

Tradesmen appeals.

## II.

We review the district court's grant of summary judgment *de novo*. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The issue of whether a given set of facts constitutes work under the FLSA is a question of law. *See Birdwell v. City of Gadsden, Ala.,* 970 F.2d 802, 807 (11th Cir. 1992).

The FLSA requires employers to pay at least a specified minimum wage for each hour worked, *see* 29 U.S.C. § 206, and overtime compensation for employment in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1). Although the term "work" is not defined in the statute, the Act defines "employ" to mean "to suffer or permit to work." *Id.* § 203(g); *see also* 29 C.F.R. § 785.6. The Supreme Court has defined work to include any time "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) (footnote omitted). However, the Portal-to-Portal Act, which amends the FLSA, modified this judicial construction of hours worked to exclude from compensation activities that are "preliminary to or postliminary to said principal activity or activities." 29 U.S.C.A. § 254(a)(2) (West 1998); *Aiken v. City of Memphis*, 190 F.3d 753, 758 (6th Cir. 1999).[1]

Time spent attending employer-sponsored lectures, meetings, and training programs is generally considered compensable. ABA, THE FAIR LABOR STANDARDS ACT, 494 (Ellen C. Kearns, *ed.,* 1999). However, DOL has promulgated interpretive regulations for defining when employee attendance at "lectures, meetings, and training programs" is *not* compensable hours worked. *See* 29 C.F.R. § 785.27.

---

[1] The Portal-to-Portal Act also excludes from compensation "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." 29 U.S.C.A. § 254(a) (1) (West 1998).

any question that, rather than providing such training to its employees during their period of probationary employment, Northeastern could simply make the successful attainment of an EMT certificate a precondition of employment. Thus, we will not hold Northeastern liable for overtime pay for time its employees spend as students, rather than as workers, simply because Northeastern has decided to hire its employees on a probationary basis until they complete the training required to hold the job on a permanent basis.

*Bienkowski*, 285 F.3d at 141.

As in this case, the *Bienkowski* plaintiffs argued that 29 C.F.R. § 785.27 made their training compensable. The *Bienkowski* court rejected the argument, stating that it "doubt[ed] that the regulation was meant to cover the peculiar situation presented here–that is, where the training is not continuing education relating to existing job duties, but instead a pre-condition for employment which the employer tolerantly allows to be satisfied while the employee is working on a probationary basis." *Id.* And, to the extent that the regulation was intended to apply to such situations, the *Bienkowski* court held that it would be inconsistent with *Ballou's* reading of the statute and precedent. *Id.*

Like the plaintiffs in *Bienkowski* and *Ballou*, the plaintiffs here are performing no work while attending the OSHA classes and the subject matter is not directly related to their job skills. Therefore, we agree with the First Circuit that the defendant employer should not be made liable for overtime pay for time its employees spend as students, rather than as workers. *See id.* We do not see why the employer should be penalized for allowing a potential employee to begin earning income while striving to meet certain prerequisites for the job when the employer could just as easily withhold employment until successful completion of all the job requirements. We might well have evaluated the situation differently if the potential employee had been unaware and uninformed of this

In *Ballou*, apprentices in a program run by the employer sought compensation for time spent attending classes conducted off-site by independent educational institutions. The apprentices were required by their employment contracts to prepare for, attend, and make satisfactory progress in these classes. An apprentice who failed to keep these conditions was subject to dismissal. For the most part, the off-site classwork did not relate directly to the skills apprentices received in on-the-job training; its approach was more theoretical, providing the apprentices with an academic understanding of the skills they were developing. *Id.* at 110.

We concluded in *Ballou* that the time spent in such classes was not compensable. We rejected the notion that the training was integral and indispensable to the employees' principal activities simply because the employee could be terminated for failing to complete it in a satisfactory manner. *Id.* at 111. We noted also that, under settled Supreme Court precedent, employers who furnished training to *potential* employees were not required under the FLSA to compensate trainees for time spent in the training program. *Id.* (citing *Walling v. Portland Terminal Co.*, 330 U.S. 158, 67 S. Ct. 644, 91 L.Ed. 816 (1947)), and *Walling v. Nashville, Chattanooga & St. Louis Ry.,*, 330 U.S. 158, 67 S.Ct 648, 91 L.Ed. 816 (1947)). Because these cases required individuals to be compensated only for their activity as workers, rather than as students, we concluded that the employer's decision to hire its employees *before* the completion of training did not obligate it to compensate them for the time spent in their status as students after their hiring. *Id.* at 112.

We find our reasoning in *Ballou* dispositive in this case as well. Here there is no question that, during the EMT training sessions, the employees perform no productive work for the employer. Nor is there

Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met:

(a) Attendance is outside of the employee's regular working hours;
(b) Attendance is in fact voluntary;
(c) The course, lecture, or meeting is not directly related to the employee's job; and
(d) The employee does not perform any productive work during such attendance.

*Id.* That is, when the activity meets all of the four criteria listed above, the time is not compensable.

The parties stipulated in the district court that Tradesmen's OSHA training course satisfied the first, third, and fourth elements of this test. Thus, the only criterion at issue is whether attendance at Tradesmen's OSHA course is voluntary, and therefore noncompensable under the FLSA. "Involuntary attendance" is defined in the regulations as follows:

Attendance is not voluntary, of course, if it is required by the employer. It is not voluntary in fact if the employee is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by nonattendance.

29 C.F.R. § 785.28.

In concluding that Plaintiffs' attendance was involuntary, the district court ruled that:

Under the definition of "involuntary" in 29 C.F.R. § 785.28, the time Tradesmen employees spend in the OSHA training course is compensable. There is no question that employees who have begun working at Tradesmen are "given to understand or led to believe that [their] present working conditions, or the continuation of

[their] employment would be adversely affected" if they did not attend the course. The Field Employee Policy Manual explicitly states that any employee who has not completed the course within the first 60 days of employment will not be sent out on new assignments, and Tradesmen does not dispute that not being sent out on new assignments effectively terminates employment.

The district court rejected Tradesmen's argument that the determination of whether the OSHA course is voluntary or involuntary must be made at the time the employee makes the decision to take the OSHA course, which in the case of the Tradesmen employees, is before the job offer is extended. The district court determined that under the regulation, the only factor affecting whether a decision is voluntary or involuntary is whether attendance at a lecture, meeting, or training program would have an adverse impact on an employee's working conditions or the continuation of his employment.

Tradesmen cites several cases in support of its argument that the employee's state of mind at the time of his initial decision to take the course is what controls. *See DeBraska v. City of Milwaukee*, 189 F.3d 650, 652-53 (7th Cir. 1999) (holding that police officers were not entitled to compensation for attending preliminary hearings because the officers did not "forfeit anything" by failing to attend); *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 141-46 (4th Cir. 1999) (holding that city firefighters who volunteered to provide advanced life support services for the city's rescue squads were not entitled to overtime compensation because the city did not request or require such service); *Price v. Tampa Elec. Co.*, 806 F.2d 1551,1551-52 (11th Cir. 1987) (per curiam) (holding that an already-employed meterman seeking overtime compensation for the time he spent in home-study course to advance to a higher paying job classification was not entitled to compensation because his employer did not require him to take the course and had he chosen not to take the course, he would have remained a meterman with the same responsibilities and benefits); *Leone v. Mobil Oil Corp.*,

523 F.2d 1153, 1159-64 (D.C. Cir. 1975) (holding that employee representatives who accompanied federal safety inspectors in a workplace inspection where the employer did not select the representative and had no control over the representative's participation or the forms and extent of his participation were not entitled to compensation absent proof of direct benefit and employer control).

None of these cases are terribly helpful because they do not fit the unique factual scenario before us, namely one where the employer makes the training a precondition of employment, but allows the applicant to complete the training post-hire, and will ultimately terminate that employment if the condition is not met. A recent decision from the First Circuit is analogous, however, and we find it persuasive here. In *Bienkowski v. Northeastern Univ.*, 285 F.3d 138 (1st Cir. 2002), the plaintiffs were police officers for the defendant university. As a condition of their employment, the plaintiffs were required to receive and retain certification as Massachusetts-registered EMTs within one year of their appointment as probationary police officers. *Id.* at 139. At the time of hire, the plaintiffs were required to sign a letter acknowledging that they would receive the certification within one year of appointment. *Id.* The training took place during the plaintiffs' probationary periods and they performed no EMT services prior to obtaining their certifications. *Id.* The plaintiffs performed no work while they attended the certification classes. *Id.* The plaintiffs argued, and the district court agreed, that the time spent in EMT training was compensable overtime under the FLSA. The First Circuit reversed, concluding that the Portal-to-Portal Act precluded compensation because the time spent by the plaintiffs in EMT training was not an integral and indispensable part of the principal activities for which they were employed. *Id.* at 142.

The *Bienkowski* court based its decision on an earlier First Circuit case, *Ballou v. Gen. Elec. Co.*, 433 F.2d 109, 111 (1st Cir. 1970):