RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0279p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JON MISEWICZ et al.,

                *Plaintiffs-Appellants,*

    *v.*

CITY OF MEMPHIS, TENNESSEE,

                *Defendant-Appellee.*

No. 14-5053

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:10-cv-02593—S. Thomas Anderson, District Judge.

Decided and Filed:  November 14, 2014

Before:  MOORE and COOK, Circuit Judges, and STEEH, District Judge.[*]

_____

### COUNSEL

**ON BRIEF:**  Thomas A. Woodley, Douglas L. Steele, Sara L. Faulman, WOODLEY & MCGILLIVARY, Washington, D.C., for Appellants.  Robert D. Meyers, GLANKLER BROWN, PLLC, Memphis, Tennessee, for Appellee.

_____

### OPINION

_____

KAREN NELSON MOORE, Circuit Judge.  In this case alleging violations of § 207 of the Fair Labor Standards Act, 29 U.S.C. § 207, plaintiffs-appellants (hereinafter "Plaintiffs"), fire fighters employed by the Memphis Fire Department, appeal the district court's grant of summary

---

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

judgment to defendant-appellee the City of Memphis, Tennessee on their complaint asserting overtime pay for paramedic training time. For the reasons set forth below, we **AFFIRM** the district court's grant of summary judgment to the City of Memphis.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

Under the Fair Labor Standards Act ("FLSA"), employers must pay their employees at least a specified minimum wage for each hour worked and overtime for hours worked in excess of forty in a workweek. 29 U.S.C. §§ 206, 207(a)(1). "Time spent attending employer-sponsored lectures, meetings, and training programs is generally considered compensable." *Chao v. Tradesmen Int'l, Inc.*, 310 F.3d 904, 907 (6th Cir. 2002). However, the Department of Labor ("DOL") regulations implementing the FLSA provide two exceptions to this general rule. First, 29 C.F.R. § 785.27 provides that "[a]ttendance at lectures, meetings, training programs and similar activities need not be counted as working time," and therefore does not need to be compensated, if four criteria are met:

(a)     Attendance is outside of the employee's regular working hours;

(b)     Attendance is in fact voluntary;

(c)     The course, lecture, or meeting is not directly related to the employee's job; and

(d)     The employee does not perform any productive work during such attendance.

*Id.* The other exception in the DOL regulations, 29 C.F.R. § 553.226 "Training time," applies only to employees of state and local governments and provides in relevant part as follows:

(a)     The general rules for determining the compensability of training time under the FLSA are set forth in §§ 785.27 through 785.32 of this title.

(b)     While time spent in attending training required by an employer is normally considered compensable hours of work, following are situations where time spent by employees of State and local governments in required training is considered to be noncompensable:

(1)     Attendance outside of regular working hours at specialized or follow-up training, which is required by law for certification of public and private sector employees within a particular governmental jurisdiction (e.g., certification of public and private

emergency rescue workers), does not constitute compensable hours of work for public employees within that jurisdiction and subordinate jurisdictions.

(2)    Attendance outside of regular working hours at specialized or follow-up training, which is required for certification of employees of a governmental jurisdiction by law of a higher level of government (e.g., where a State or county law imposes a training obligation on city employees), does not constitute compensable hours of work.

*Id.*

## B.  Facts and Procedure

The vast majority of facts are undisputed for the purposes of summary judgment.  "The Memphis Fire Department ('MFD') provides fire protection services and pre-hospital care for the City of Memphis ('City')," including "paramedic ambulance services."  R. 67-6 (Def.'s Resp. to Pls.' Stat. Facts ¶ 1) (Page ID #900).  Around 2001, the City began requiring all newly hired fire fighters to become certified as level four emergency medical technicians ("EMT-IV"), which "fall[s] somewhere between an EMT-B [a basic EMT] and a paramedic."  *Id.* ¶ 3 (Page ID #901).  In October 2007, the City began a new policy requiring all fire fighters hired after October 29, 2007, to become certified as paramedics (called EMT-P).  *Id.* ¶ 4, 19 (Page ID #901, 907).  Plaintiffs were hired on or after October 29, 2007, meaning all were subject to the new policy.  R. 79 (Hr'g Tr. at 4) (Page ID #973).  "[T]he State of Tennessee does not require fire[ ]fighters to be certified as paramedics."  R. 67-6 (Def.'s Resp. Pls.' Stat. Facts ¶ 5) (Page ID #901).  "The City has the sole discretion to either end the policy of requiring fire fighters to become trained as paramedics, or to change the policy."  *Id.*  However, Tennessee prescribes the minimum requirements that must be met to obtain a paramedic certification, which includes mandatory classroom instruction and clinical work.  *Id.* ¶ 29 (Page ID #910); R. 23-6 (Def.'s Stat. Undisputed Facts ¶ 9) (Page ID #300).  It can take an individual up to eighteen months to become trained as a paramedic.  R. 67-6 (Def.'s Resp. Pls.' Facts ¶ 29) (Page ID #910).

"[A]s early as December 2006, the City's job description and job postings for Fire Recruits listed the [paramedic licensure] requirement . . . as a condition of continued employment."  R. 64-2 (Def.'s Stat. Undisputed Facts ¶ 5) (Page ID #783).  The MFD required

its job applicants "to sign an 'Availability of Applicant' form when submitting their application to become a fire fighter." R. 67-6 (Def.'s Resp. Pls.' Facts ¶ 6) (Page ID #901–02). In relevant part, the form required an applicant to agree that "[w]ithin three (3) years of employment with the Memphis Fire Department, you must become licensed by the State of Tennessee as a Paramedic (EMT-Advanced), as a condition of continued employment."[1] *Id.* One hundred and eleven Plaintiffs signed the forms, and "[a]ll but four . . . signed in January or February 2007." *Id.* ¶ 17 (Page ID #906). When Plaintiffs signed the forms, the MFD did not tell them that the training would be uncompensated or off-duty. *Id.* ¶ 16 (Page ID #906).

"On the day they were hired, [P]laintiffs were required to sign an Acceptance Letter . . . stat[ing] that they were hired in the position of 'Fire Recruit.'" *Id.* ¶ 21 (Page ID #908). The letter stated that a Fire Recruit's employment is subject to certain conditions, including successfully completing training to become certified as an EMT, but the letter did not include a paramedic certification requirement. *Id.*

Once an applicant was hired, the MFD required the new hire to sign the following training agreements, all of which stated that successful completion was a condition of continued employment: an EMT-IV Agreement, a Firefighter I and II Agreement, and a Paramedic Agreement. *Id.* ¶ 8–11 (Page ID #903–04). The MFD considers the time spent in the EMT-IV, Firefighter I, and Firefighter II training as hours worked and therefore compensates employees for that time. *Id.* ¶ 15 (Page ID #905). It "does not count the hours spent attending Paramedic Training . . . as hours of work and does not compensate the employees for attending that training." *Id.* The Paramedic Agreement specifically provided that, "as a condition of continued employment," fire fighters had to "become licensed as a Paramedic (EMT-P) within three years; perform as a paramedic; and maintain EMT-P certification." *Id.* ¶ 11 (Page ID #904) (emphasis omitted). It also stated that "[f]ailure to become licensed by the state of Tennessee as a Paramedic . . . will be just cause for termination." *Id.* While it stated that "recertification w[ould] be at the employee's own expense," it did not state that employees would have to pay

---

[1]The form also required applicants to agree that they would become certified as an EMT-IV within one year and complete the Fire Fighter I and II Certification Programs within one and three years respectively "as a condition of continued employment." *Id.*

for initial certification "or that training w[ould] be performed off-duty and without compensation." *Id.* (emphasis omitted).

"Forty-seven . . . of the Plaintiffs were given, and required to sign, the EMT-IV and Firefighter I & II Agreements" when they were hired in October and November 2007, "but were not given, or required to sign, the Paramedic Agreement until September 2008." *Id.* ¶ 18 (Page ID #906–07) (emphasis omitted). "Approximately 74 [P]laintiffs signed the Paramedic Agreement in September 2008." *Id.* ¶ 19 (Page ID #906). Thirty-three Plaintiffs signed the Paramedic Agreement when they were hired. *Id.* ¶ 20 (Page ID #906). Plaintiffs' job title when they were hired was "Fire Recruits." *Id.* ¶ 22 (Page ID #908). After a one-year probationary period, Plaintiffs were given the title of "either a fire private I or II, or a fire fighter / EMT." *Id.*

All Plaintiffs have actually undertaken the mandatory paramedic training, although "[a]pproximately five Plaintiffs were terminated or resigned their positions after they failed to complete the paramedic training within the time permitted." *Misewicz v. City of Memphis*, No. 10-2593-STA-CGC, 2013 WL 6780532, at *8 (W.D. Tenn. Dec. 19, 2013); *see also* R. 79 (Hr'g Tr. at 5) (Page ID #974). Fire fighters who achieved their paramedic certification—including Plaintiffs—"rotate between providing fire[-]fighting activities and paramedic activities during the course of their shift[s]." R. 67-6 (Def.'s Resp. Pls.' Facts ¶ 25) (Page ID #909). On a typical 24-hour shift, MFD fire fighters "spend twelve . . . hours on an ambulance" serving as paramedics and "twelve . . . hours on a fire engine or fire truck" serving as fire fighters. R. 64-2 (Def.'s Stat. Undisputed Facts ¶ 12) (Page ID #784). "Between October 2007 and June 1, 2013, MFD fire fighters responded to 563,272 Emergency Medical Services ('EMS') incidents compared to only 131,113 fire incidents." *Id.* ¶ 11 (Page ID #784).

On August 10, 2010, Plaintiffs filed a complaint in the U.S. District Court for the Western District of Tennessee alleging that the City of Memphis had violated § 207 of the FLSA by not paying Plaintiffs overtime compensation for all of the hours Plaintiffs worked in mandatory training in excess of the hourly levels specified in 29 U.S.C. § 207. R. 1 (Compl. ¶¶ 6–10) (Page ID #4). Both parties later moved for summary judgment. The parties focused on whether either of the exceptions to the general rule that employers must compensate employees

for training discussed above—§ 785.27 and § 553.226—applied to this case.  R. 22 (Pls.' Mot. Summ. J.); R. 23 (Def.'s Mot. Summ. J.).

The district court denied the parties' first motions for summary judgment on March 26, 2012.  *Misewicz v. City of Memphis*, 864 F. Supp. 2d 688, 709 (W.D. Tenn. 2012).  The court held that the City of Memphis needed to show that the paramedic certification requirement met only one of the two exceptions to avoid liability.  *Id.* at 696.  Next, it held that while § 553.226(b)(2) did not apply to the facts of this case, *id.* at 697, genuine issues of material fact remained as to whether § 553.226(b)(1) applied,  *id.* at 703.  The district court also denied the parties' motions for summary judgment on whether § 785.27 applied because genuine disputes of material fact existed as to whether the training was voluntary and whether it was directly related to Plaintiffs' job duties.  *Id.* at 708.

On August 6, 2013, Plaintiffs filed a Renewed Motion for Partial Summary Judgment, and the City of Memphis filed a Renewed Motion for Summary Judgment.  R. 63 (Pls.' Renewed Mot. Summ. J.); R. 64 (Def.'s Renewed Mot. Summ. J.).  The district court granted the City of Memphis's motion on December 19, 2013, reiterating its 2012 holding that the City needed to meet only one of the two exceptions, and holding that as a matter of law the paramedic training program fell within the exception provided in § 553.226(b)(1).  *Misewicz*, 2013 WL 6780532, at *7–8. The court did not reach whether the training program met the exception in § 785.27.  *Id.* at *9.

Plaintiffs appeal the district court's grant of summary judgment.  They argue that the district court erred in:  (1) declining to hold that the paramedic training program must meet *both* exceptions to escape liability; (2) holding that the training program met the requirements of § 553.226(b)(1); and (3) declining to consider and find that the training program failed to meet the exception in § 785.27.  Appellant Br. at 2.

## II.  ANALYSIS

### A.  Does the City of Memphis Need to Meet Both Exceptions?

The district court held that the City of Memphis needs to establish that only *one* of the exceptions set forth in the DOL regulations implementing the FLSA apply to the paramedic

training in order to avoid paying Plaintiffs overtime for their paramedic training. *Misewicz*, 2013 WL 6780532, at *8. The court found that "nothing from the face of the regulation supports Plaintiffs' construction that both exceptions must be proven." *Id.*

Plaintiffs argue on appeal that the City of Memphis must show that the paramedic training requirement satisfies both exceptions to escape liability. Appellant Br. at 20. First, they claim that "the plain language" of § 553.226(a) supports their position because, instead of stating that the general rules do not apply to public-sector employers, the regulation specifically "reiterat[es]" that the "'general rules for the compensability of training time under the FLSA'" are provided in §§ 785.27 through 785.32. *Id.* at 21 (quoting § 553.226(a)). To read § 553.226(a) as not requiring that § 785.27 also be met, Plaintiffs argue, "would render Section 553.226(a)'s reference to general training requirements meaningless," thereby violating a basic rule of statutory construction. *Id.* at 22. Second, Plaintiffs claim that a November 2, 1988 DOL Wage and Hour Division Opinion Letter shows that the DOL intended to subject public-sector employers to both regulations because "as soon as [the] DOL found the training time to be compensable under *either* one of those sections (Section 553.226 or Section 785.27 *et seq.*), the inquiry stopped and the failure to meet either regulatory test rendered the training time compensable work time under the FLSA." Appellant Br. at 24.

The City counters that the district court correctly held that it need prove only that the paramedic training meets either the exception in § 785.27 *or* an exception in § 553.226. First, the City argues that Plaintiffs' construction of § 553.226 violates the basic rule that "a specific statute controls over a general statute." Appellee Br. at 12 (internal quotation marks omitted). Second, the City argues that the 1988 DOL Opinion Letter "lack[s] the force of law" and is unpersuasive because it considered a situation where the training was required only under municipal law, not state law as is the case here. *Id.* at 13–14 (internal quotation marks omitted).

We have never interpreted § 553.226, and, to our knowledge, no court has considered how to construe § 553.226(a) in conjunction with § 553.226(b). We hold that the plain text of § 553.226, its legislative and regulatory history, and DOL Opinion Letters on § 553.226 all indicate that the City of Memphis can escape liability by proving *only* that an exception in § 553.226(b) is met.

### 1. Text of § 553.226

The plain text of § 553.226 appears to create an *unqualified* exception to the general rule that employers must compensate employees for time spent in training: "While time spent in attending training required by an employer is normally considered compensable hours of work, *following are situations where time spent by employees of State and local governments in required training is considered to be noncompensable*." 29 C.F.R. § 553.226(b) (emphasis added). This section does not state that an exception under "the general rules" referenced in § 553.226(a) must also be satisfied.

The rules of statutory construction that the parties cite also support the City of Memphis's interpretation of § 553.226. We have held that "[i]t is a basic rule of statutory construction that a specific statute controls over a general statute." *Edward D. Rollert Residuary Trust v. Comm'r*, 752 F.2d 1128, 1133 (6th Cir. 1985). Section 553.226(b) clearly addresses a more specific situation—state and local government employees—than the "general rules" outlined in § 785.27 *et seq.*, which apply to public- and private-sector employees alike. Moreover, Plaintiffs' argument that to read § 553.226(a) any other way would render it "meaningless" is not persuasive. Appellant Br. at 22. It is true that the Supreme Court has "cautioned against reading a text in a way that makes part of it redundant" or "mere surplusage." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 669 (2007). However, under the City's reading of § 553.226, subsection (a) is not "meaningless." Its inclusion makes clear that, if training required by a public-sector employer does not meet an exception in § 553.226(b), the employer must prove that it falls under a general exception in §§ 785.27–32 if it wishes not to compensate its employees for training.

### 2. Legislative and Regulatory History

The DOL promulgated § 553 in response to the Fair Labor Standards Amendments of 1985 (hereinafter the "1985 Amendments"). Pub. L. No. 99-150, 99 Stat. 787 (codified at 29 U.S.C. § 201 *et seq.*); Application of the Fair Labor Standards Act to Employees of State and Local Governments, 52 Fed. Reg. 2012-01 (Jan. 16, 1987). Congress passed the 1985 Amendments in the wake of the Supreme Court's decision in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985), overruling its decision in *National League*

*of Cities v. Usery*, 426 U.S. 833 (1976), that the extension of FLSA coverage via amendments in 1966 and 1974 to state and local government employees engaged in "traditional governmental functions" was unconstitutional. H.R. REP. NO. 99-331, at 6–8 (1985); S. REP. NO. 99-159, at 5–8 (1985). The 1985 Amendments do not specifically direct the DOL to promulgate § 553.226. But the overall spirit of the 1985 Amendments' specific provisions—such as allowing state and local government employers to grant compensatory time off with pay in lieu of cash overtime wages to their employees in certain situations, Pub. L. No. 99-150 § 2(a)—reflect a desire to apply the FLSA to state and local government employers while at the same time making some of its requirements less burdensome given their unique situation. For example, the Senate Report on the 1985 Amendments explains that while "[t]he Committee is not retreating from the principles established by Congress in the 1966 and 1974 FLSA amendments" that applied the "rights and protections" of federal and private-sector employees to "employees of states and their political subdivisions," "*[a]t the same time, it is essential that the particular needs and circumstances of the States and their political subdivisions be carefully weighed and fairly accommodated.*" S. REP. NO. 99-159, at 7 (emphasis added).

The limited history of § 553.226 similarly indicates that the DOL promulgated it in the spirit of easing the burden of the FLSA for state and local government employers. An earlier version of § 553.226 included a version of what is now § 553.226(b)(1) (called § 553.226(c)), but not what is now § 553.226(b)(2). Application of the Fair Labor Standards Act to Employees of State and Local Governments; Fire Protection and Law Enforcement Employees of Public Agencies, 51 Fed. Reg. 13413-01, 13420 (Apr. 18, 1986). The DOL explained that "Section 553.226(c) incorporates into the regulations long-standing interpretations concerning time spent in attendance at specialized or follow-up training which is required by law for certification of employees. . . . [T]he Department intends to apply the same hours worked principles to both public and private workers with respect to such specialized training." *Id.* at 13415. The reference to "long-standing interpretations" appears to be to a 1980 DOL Opinion Letter in which the DOL opined that an employer does not violate § 785.27(b) if it requires attendance at state-required training. Wage and Hour Opinion Letter WH-504, 1980 WL 141338 (Oct. 23, 1980) (hereinafter "1980 Opinion Letter"). And in the course of promulgating § 556.226, the DOL received comments from the National League of Cities that "the proposed test for exclusion

from hours worked, namely that such training be required for both private and public sector employees, *is too restrictive*," since "State law for certain types of specialized training often only applies to public sector employees." 52 Fed. Reg. 2012-01, 2025 (emphasis added). In response, the DOL revised § 553.226 to include § 553.226(b)(2). *Id.* at 2044. This revision suggests that the DOL appeared to be concerned with not overly burdening public-sector employers.

While this legislative and regulatory history is admittedly quite limited, Plaintiffs' argument appears to be contrary to its general spirit of giving state and local government employers greater flexibility than private employers in how they must comply with the FLSA. As the district court noted, "the rule proposed by Plaintiffs would actually make it more difficult for a public sector employer such as a municipal fire department to avoid FLSA liability than a private sector employer" because public sector employers would have "to clear both the general regulatory hurdles as well as the specific requirements of § 553.226," whereas private employers would need to meet only the general rules. *Misewicz*, 2013 WL 6780532, at *8 n.26.

Moreover, the DOL appeared to characterize the exceptions in § 553.226(b) as independent exceptions. In explaining its decision to include subsections (b)(1) and (2) in its final version of § 553.226, the DOL stated that "[t]he Department . . . has rewritten this section . . . by specifying two separate criteria, *each of which, standing on its own*, would constitute such training time as noncompensable." 52 Fed. Reg. 2012-01, 2025 (emphasis added). The DOL did not state that public-sector employers also would have to show that training time was non-compensable under the "general rules" provided in §§ 785.27 to 32. *Id.*

### 3. DOL Opinion Letters

While as a general matter "'opinion letters . . . do not warrant *Chevron*-style deference,'" *Beck v. City of Cleveland*, 390 F.3d 912, 919 (6th Cir. 2004) (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)), such letters can be persuasive authority under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), to the extent that they are thorough, well-reasoned, and consistent with the agency's earlier and later opinions. *Chao v. Occupational Safety & Health Review Comm'n*, 540 F.3d 519, 526 (6th Cir. 2008).

No DOL opinion letter directly addresses whether both exceptions must be satisfied. But opinion letters in which the DOL considers the compensability of training programs under § 553.226 indirectly provide some insight. To be sure, their persuasive value is not great given that none provides thorough reasoning that directly addresses this issue. To the extent they suggest anything, however, they appear to weigh more in favor of the City's reading of § 553.226.

The 1988 Opinion Letter cited by Plaintiffs does not strongly support Plaintiffs' position. In the letter, the DOL explained that the city in question could not invoke § 553.226(b) to avoid compensating fire fighters for time spent obtaining city-mandated EMT certification because the certification requirement was not imposed by a higher governmental body or required of private-sector employees. Wage and Hour Opinion Letter, 1988 WL 1524535 (Nov. 2, 1988). The DOL did not proceed to analyze whether the certification requirement met the § 785.27 exception. Similarly, it decided that the city could not invoke § 785.27 to avoid paying fire lieutenants for time spent in a training course that the city required all lieutenants to complete within eighteen months of promotion to that rank, but did not address whether the training course satisfied § 553.226(b). *Id.* Plaintiffs read the letter to imply that public employers must show that their training requirements satisfy *both* § 785.27 and § 553.226 because the DOL concluded that training was compensable after finding that it failed to satisfy *only one* of those two exceptions. But the facts before the DOL weaken that inference. For instance, in examining whether the EMT training fell within the § 553.226(b) exception, the DOL noted that the training "is not voluntarily undertaken by the employees." *Id.* Subsection (b) of § 785.27 requires that the training be voluntary for the exception to apply; therefore, another plausible reading of the 1988 Opinion Letter is that the DOL did not explicitly consider whether the exception in § 785.27 is satisfied because it was told to assume that the second of four required criteria for it to apply was not present. And while the DOL did not specify the source of the lieutenant's training requirement, it explained that such training was "a condition of promotion to the rank of fire lieutenant and continued employment in that rank." *Id.* A city's internal criteria for promoting city employees will likely fall outside of § 553.226 in most cases because such criteria are unlikely to be governed by state law or applied equally to private-sector employees.

Moreover, several other DOL Opinion Letters engage in analysis that contradicts Plaintiffs' reading of § 553.226. For example, in a 2006 Opinion Letter, the DOL considered whether a police department would have to compensate officers for training it requires officers to undergo before carrying off-duty firearms. Wage and Hour Opinion Letter, 2006 WL 1836647, at *1 (June 1, 2006). The DOL concluded that the training fell within § 553.226, and therefore the police department did not need to compensate its officers for the training. *Id.* at *2. The DOL did not then consider whether the training program also fell within the exception in § 785.27, as Plaintiffs' construction of § 553.226 would require. *Id.* At least two other opinion letters proceed similarly. *See* Wage and Hour Opinion Letter, 1999 WL 1788163 (Sept. 30, 1999) (concluding that required training for fire fighters to maintain EMT certification granted through the state did not need to be compensated because it fell within § 553.226, without analyzing whether it also fell within the exception in § 785.27); Wage and Hour Opinion Letter, 1990 WL 10536201 (Feb. 5, 1990) (concluding that training for recertification of paramedics did not need to be compensated because it fell within § 553.226(b)(1), without analyzing whether it also fell within the exception in § 785.27).

In sum, we hold that the plain text of § 553.226, its legislative and regulatory history, and DOL Opinion Letters on § 553.226 all indicate that this section provides a stand-alone exception to the general rule that training time is compensable. The City of Memphis does not need to compensate Plaintiffs for training that satisfies an exception in § 553.226(b).

**B. Does the City of Memphis Satisfy the Exception in § 553.226(b)(1)?**

The district court held that "the exception set forth in § 553.226(b)(1) applies under the facts presented." *Misewicz*, 2013 WL 6780532, at *8. First, it reaffirmed its holding in its 2012 order that "Tennessee law required Plaintiffs, much like any public or private sector employee performing paramedic-level care, to obtain paramedic certification by attending the training mandated for paramedics under Tennessee law." *Id.* (footnote omitted). The court explained that, while "Plaintiffs' contention" that "paramedic training is not required by law for fire fighters" is true in that "there is no requirement under Tennessee law that fire fighters must also be certified as paramedics," "the undisputed evidence shows that the MFD did not hire Plaintiffs to perform simply as fire fighters but to perform as both fire fighters and paramedics."

*Id.* As support, the court pointed to the undisputed evidence that Plaintiffs now actually spend half their time as fire fighters and half their time as paramedics after having obtained paramedic certification. *Id.*

Plaintiffs do not appeal the district court's ruling that Tennessee law requires private- and public-sector employees engaged in paramedic-level care to be certified, *id.*, or that Tennessee law specifies the requirements to become certified. They instead insist that the relevant issue is whether state law requires fire fighters to be cross-trained as paramedics. Appellant Br. at 35. They then reiterate that "[t]he undisputed facts show that the paramedic cross-training requirement was an MFD policy that the MFD imposed on itself" and that neither Tennessee law nor any other law requires that public- and private-sector fire fighters be cross-trained as paramedics. *Id.* at 38–39. Finally, while Plaintiffs do not contest the district court's characterization of the division of their duties after they completed paramedic training or that they eventually signed the Paramedic Agreement, they stress that "[a]t the time of hire, the plaintiffs were employed as fire fighter recruits," "[t]heir Acceptance Letter does ***not*** identify the plaintiffs as 'fire fighter / paramedic' recruits," and they did not perform paramedic duties until three years after being hired. *Id.* at 40.

The City of Memphis responds that § 553.226(b)(1) applies because "Plaintiff fire fighters were, in fact, hired to be fire fighter/paramedics" and that "[t]here is no question that they were regularly assigned to perform paramedic duties." Appellee Br. at 25. While the City does have "sole discretion to maintain or discontinue its policy requiring fire fighters to become certified paramedics," Tennessee law requires that paramedics be certified and "the City has no power to change the minimum requirements for obtaining paramedic certification." *Id.* at 25–26. The City also disputes that Plaintiffs did not have adequate notice at the time they were hired that they would be expected to perform as both fire fighters and paramedics. *Id.* at 17–18.

Thus, the key dispute is whether, under § 553.226(b)(1), determining that training is "required by law for certification" should focus on the job description provided to an employee at the time of hiring, and whether those duties require certification under state law, or whether the dispositive issue is whether the employer actually requires the employee regularly to perform duties after training that require state certification. If the former, arguably a genuine dispute of

material fact exists as to whether sufficient notice was provided to Plaintiffs at the time of hiring that they were being hired to be both fire fighters and paramedics.  If the latter, however, the City would be entitled to judgment as a matter of law based on the undisputed facts demonstrating that Plaintiffs split their time as fire fighters and paramedics after training.

No circuit court has construed "required by law for certification" in § 553.226(b)(1) or (b)(2).  In fact, § 553.226(b) is mentioned in only one circuit court decision, and the Fifth Circuit did not hold whether the exception applied to the facts of the case.  *Moreau v. Klevenhagen*, 956 F.2d 516 (5th Cir. 1992).  Nor does the legislative or regulatory history or any DOL Opinion Letter specifically address this issue.

From the face of the regulation, it does not appear that it is dispositive whether employees are informed when they are hired of all of the duties that they will be expected to perform that require state certification.  Clear notice at the time of hiring to employees of required training can be relevant to § 785.27(b)'s requirement that the training be voluntary, but there is no such explicit requirement in § 553.226(b).  As explained in the 1980 Opinion Letter, whose interpretation § 553.226 appears to have codified, employers do not need to compensate employees for state-required training for two reasons:  because it is the state that has "usurped and controlled the employee's time," not the employer; and because the state sets the training requirements, the training is "of general applicability, and not tailored to meet the particular needs of individual employers," and therefore presumably the employee could use the certification to obtain employment elsewhere.  Wage and Hour Opinion Letter WH-504 (Oct. 23, 1980).  The DOL reached this conclusion despite the fact that it analyzed the training program under § 785.27, subsection (b) of which specifically requires that the training be "voluntary." The DOL did not separately consider whether the employee voluntarily agreed to the training— for example by accepting employment while knowing that the training would be required.  *See also* Wage and Hour Opinion Letter, 2001 WL 1592778 (May 3, 2001) (reiterating the analysis of the 1980 Opinion Letter); Wage and Hour Opinion Letter, 1989 WL 1632933 (Aug. 2, 1989) (same); Wage and Hour Opinion Letter, 1985 WL 1087351 (Dec. 30, 1985) (same).

Moreover, the relevant Tennessee laws and regulations defining who must undergo training to be certified as a paramedic do so by *focusing on the duties performed*.  *See, e.g.*,

TENN. COMP. R. & REGS. 1200-12-01-.04(1)(a)8. ("'Paramedic' means a person who has successfully completed an accredited Paramedic Program[,] . . . has qualified by examinations to perform pre-hospital emergency patient care, and *provides basic and advanced emergency medical care* . . . .") (emphasis added); TENN. CODE ANN. § 68-140-311(a)(8) (prohibiting "*performing or attempting emergency care techniques or procedures* without proper permission, license, certification, [or] training . . . .") (emphasis added). Thus, individuals who actually perform paramedic-level care must be certified; it does not matter if they are hired as "paramedics" by their employers.

Therefore, under § 553.226(b), the determination of whether training is "required by law for certification" should focus on whether the employer actually hired the employee to perform duties that require state certification, as judged by whether the employee is asked regularly to perform those duties after training.

The one relevant district court case cited by Plaintiffs, *Allen v. City of Texas City*, No. G-10-176, 2012 WL 1316568 (S.D. Tex. Mar. 6, 2012), does not contradict this reading of § 553.226(b). In that case, the court held that fire fighters employed by Texas City were required to be compensated for training the City required them to undergo to receive numerous certifications beyond the two certifications required by state law for municipal fire fighters. *Allen*, 2012 WL 1316568, at *3. Plaintiffs argue in their Reply Brief that, because Texas law sets the standards for certification of one of the training requirements that the district court held needed to be compensated, *Allen* reached the precise issue in this case. Appellant Reply Br. at 15 n.3. However, the *Allen* court did not examine whether the plaintiffs were actually asked to perform and were in fact performing duties that would require the additional certifications. *Allen*, 2012 WL 1316568, at *3. Indeed, it noted that the exception in § 553.226(b) "is predicated on the fact that the specialized training [is] required by law for certification *to perform a particular job*." *Id.* (emphasis added).

In this case, it is undisputed that all Plaintiffs were hired after the MFD implemented the policy requiring fire fighters to become certified as paramedics, and that all signed the Paramedic Agreement. After becoming certified, Plaintiffs were asked to spend half of their time performing paramedic duties. On a typical twenty-four-hour shift, MFD fire fighters who are

certified as paramedics—including Plaintiffs—spend twelve hours on an ambulance serving as paramedics and twelve hours on a fire unit serving as fire fighters.  And MFD fire fighters appear to respond to more incidents requiring paramedic skills than fire suppression skills:  between October 2007 and June 1, 2013, MFD fire fighters responded to 563,272 emergency medical services incidents as compared to 131,113 fire suppression incidents.  Thus, the MFD hired Plaintiffs to perform both fire-fighting and paramedic duties.

In order to perform the paramedic duties of their job, Tennessee law requires that Plaintiffs attend training to become certified as paramedics.  Therefore, the City's paramedic certification program meets the exception in § 553.226(b)(1), and the district court properly granted the City summary judgment.  Plaintiffs were not required to undergo the paramedic training but then not asked to perform paramedic duties, a situation that might render § 553.226(b)(1) inapplicable.  Nor does it matter that Plaintiffs performed paramedic duties only after training.  Our statement in *Chao v. Tradesmen International, Inc.* is equally applicable here: "We do not see why the employer should be penalized for allowing a potential employee to begin earning income while striving to meet certain prerequisites for the job when the employer could just as easily withhold employment until successful completion of all the job requirements."  310 F.3d at 910.  The MFD did not violate 29 U.S.C. § 207 by failing to pay Plaintiffs overtime compensation for the hours of training required to become licensed by the State of Tennessee as paramedics.

### III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment to the City of Memphis.